# JANUARY TERM, 1852.

## THE STATE vs. FLOYD.

1. It is the safer course for the party who wishes a change of venue, to give reasonable notice to the attorney general or circuit attorney, before the calling of the case, and not depend upon the filing such notice merely in open court with the clerk.

2. An abuse of a discretionary power vested in the circuit court, must be very clearly seen, before its judgment will be reversed on that account.

3. The judgment of the court below will not be reversed for a refusal to give instructions, provided it appears from the record, that the law of the case has been laid down properly and fairly by the court, in the instructions which were given to the jury.

4. A few short, pithy and sententious instructions, embodying the law of the case, will always be better understood, and will have more effect upon the triers of the fact, than a long list of instructions, loaded with words, tending to confuse, rather than conduct the jury to a proper conclusion.

5 Possession of stolen property, after the theft, to raise a presumption of guilt, must be recent. Possession at any time will not raise such presumption. "Any time" may refer to a period too remote; it must be recent. State vs. Wolf, ante 16S.

## ERROR to Cole Circuit Court.

### STATEMENT OF THE CASE.

James P. Floyd, the plaintiff in error, was, at the February term, 1851, of the Cole circuit court, indicted for grand larceny. The indictment contains but one count, and charges that the defendant on the day, &c., at, &c., feloniously stole, took and carried away, &c., two striped vests, each worth the sum of five dollars—two black satin vests worth the sum

The State vs Floyd

of ten dollars—one black frock coat of the value of ten dollars—one hair brush worth one dollar—one plush cap of the value of one dollar—one bleached domestic shirt worth two dollars—two pair of boots of the value of ten dollars—ten silk handkerchiefs of the value of one dollar each—ten pocket knives of the value of one dollar each—twenty pair of shoes of the value of two dollars each, of the goods and chattels of Thomas M. Winston & Co.

On the first day of the November term, 1851, the plaintiff in error filed his petition, verified by his affiadvit, for a change of venue. The grounds of the petition were, that the minds of the inhabitants of Cole county were so prejudiced against him that he could not have a fair trial therein. And on the day following, the court overruled the application for a change of venue, to which opinion of the court the plaintiff in error excepted, and, therefore, filed his affidavit and application for a continuance of the cause, and before the same was determined by the court, asked leave to file an amended affidavit which the court refused and then overruled the application for a continuance, to which the plaintiff in error excepted, and thereupon he was arraigned in due form of law and plead not guilty to said indictment. A jury was sworn and the State introduced the following witnesses: G. M. Wray, Mrs. Trimble, Thomas M. Winston, the prosecutor, Mary Trimble and Eppa Trimble.

The plaintiff in error objected to all that part of the testimony of Eppa Trimble, which relates to the other goods disowned by Thomas M. Winston, the prosecutor; but the objection being overruled by the court, this evidence was permitted to go to the jury, to which the plaintiff in error excepted. The State here closed her case, and the defendant in error introduced the following testimony: The affidavit of Thomas M. Winston before the committing magistrate. G. M. Wray being recalled testified to the good character of the plaintiff in error. The attorney general admitted that Hiram Mercer Smith would do the same. The plaintiff in error offered in evidence the warrant of arrest issued against the plaintiff in error and one Ambrose Barker jointly, which was objected to by the attorney general and the objection sustained, to which plaintiff in error excepted. The counsel for the plaintiff in error then offered to read in evidence the indictment against Ambrose Barker, charging him with the commission of the same offence, which being objected to, and the objection sustained, the plaintiff in error excepted and here rested his case.

The court then, at the instance of the attorney general, gave the following instructions on the part of the defendant in error.

1st. "If within three years next, before the finding of the indictment in this cause, and in Cole county, the defendant stole, took and carried away personal property, of the value of ten dollars or more, described in the indictment, and of the goods and chattels of Thomas Winston or Thomas Winston and partner, against the will of the owners, and with an intention on the part of prisoner to defraud the owners, and apply the things stolen to his own use the jury will find him guilty and assess his punishment to imprisoment in the penitentairy, not less than two nor more than five years: R. S. 1845, 895, 359, 868; 3 Chitty's Cr. L. 926; 2 Starkie Ev. 827; Russ. Ry. C. C. 307."

2nd. "If goods of the value of ten dollars or more, described in the indictment, were stolen and afterwards found in the possession of the defendant, it is prima facie evidence of guilty possession, and if unexplained by him is conclusive evidence of his guilt: 1 Greenleaf Ev. 41."

The plaintiff in error then asked the following instructions. The court gave the first, fifth and tenth, which are as follows :

"That before they can find a verdict of guilty on this indictment, they must be satisfied from the evidence, beyond a reasonable doubt, that the prisoner stole. took and carried away the property mentioned in the indictment, or at least enough of said property to be of the value of ten dollars."

"That the jury cannot find the prisoner guilty, unless they believe from the evidence that Floyd took, stole and carried away the goods recognized by Winston, or so many of them as will amount to the sum of ten dollars."

The State vs. Floyd.

"If the jury have a reasonable doubt of the guilt of the prisoner, they will find him not guilty."

The court refused to give the second, third, fourth, sixth, seventh, eighth and ninth instructions asked for by the plaintiff in error.

To the giving of the second instruction asked for by the defendant in error, and the refusing of those asked for by the plaintiff in error he excepted. The jury returned a verdict of guilty and asssessed his punishment to two years imprisonment in the penitentiary. A motion for a new trial was filed and overruled by the court, and the plaintiff in error brings the case into this court by writ of error.

PARSONS, for plaintiff in error.

1. The circuit court should have granted a change of venue in this cause. The record shows the fact to be, that the application for a change of venue was made on the first day of the term, and that it was refused on the second of the term, before the arraignment of the prisoner. That according to the doctrine of this court, in Reid vs. The State, the filing of the application, on the first day of the term, was a notice, both reasonable and sufficient, to the attorney general. The statute requires no written notice, and evidently is intended to mean, if the application be made in open court the filing of the application gives sufficient notice of the fact. Had the legislature intended a notice in writing to be served on the prosecuting attorney, they would have so declared. See statutes of Mo. 874, 875, secs. 17, 20 and 24: Reid vs. The State, 11 Mo. Rep. p. 379. It seems to have been the intention of the legislature that a change of venue should be a matter of right, and that courts should have no power to refuse the same, or in other words, it was intended that this act should be liberally construed for the benefit of those seeking to avail themselves of it: Session acts, 1847, p. 110.

2. The circuit court should have granted the plaintiff in error a continuance upon his affidavit, which, though perhaps, informal, contains the substance of the grounds for a continuance; and should, by all means, have permitted an amended affidavit to have been filed before the motion for the continuance was disposed of.

3. The circuit court should have excluded all that part of Eppa Trimble's testimony, which relates to the other goods not claimed or identified by Thomas M. Winston. The effect of such testimony was to create the impression upon the minds of the jury that those goods were stolen, and in that manner raise a presumption that the goods identified by Winston were also stolen. Such evidence was calculated to mislead, and did mislead the jury in regard to the issue: 1 Greenleaf Ev. p. 64. The presumption of law is in favor of innocence, and the presumption is that the prisoner came by his property honestly. That presumption is strengthened, in part, by the testimony of Winston, when he denies that a portion of the goods charged in the indictment ever belonged him, or that he ever lost any such goods. It was incompetent, therefore, for the State to introduce any testimony in regard to such goods, after Winston denied ownership in them. Admitting that those goods were stolen, they were not stolen from Winston, and consequently could form no part of the subject of enquiry under this indictment: 1 Greenleaf Ev. p. 120, 121. Even admitting further, that those goods were Winston's, and it had been proven that they were taken at a different time from those identified by Winston, (admitting that those identified by Winston were stolen) still evidence of the stealing of the goods disclaimed by Winston was inadmissible under this indictment. The presumption of law is in favor of innocence, and the evidence tending to prove one larceny, cannot be introduced to prove a separate and distinct charge: Roscoe Crim. Ev. 81. The addmission of this evidence is sufficient to warrant this court in reversing the judgment of the court below: 2 Russell on Crimes, 725, 726; Walker vs. Commonwealth, 1 Leigh R. 574.

4. The second instruction asked for by the defendant in error should not have been given. There is no proof that the goods were found in the possession of the defendant in error, recently after the alleged offence was committed. There was evidence going to show that

The State vs. Floyd.

another individual (Barker) might have committed the alleged offence. There was evidence of the good character of the prisoner; all of which should have precluded the court from giving the instruction. It assumes the broad ground, that possession of stolen goods is prima facie evidence of guilty possession, and if unexplained, is a proof of the same. There is a time, after the loss, when this presumption of law ceases, and also there is a time, after the loss, when it is weakened. These questions should have been left for the consideration of the jury. Good character often rebuts the presumption of guilt arising from possessions, yet this latter evidence in no wise accounts for or explains the possession. The possession must be recent. The language of the instruction is indefinite. The fact that some other person probably stole the goods, if they were stolen, is a sufficient defence against the prima facie case of possession, but does not explain the possession. In support of the above positions the court is cited to 1 Greenl. Ev. 99, 71; Roscoe Crim. Ev. 643; 2 Phil. Ev.; Cowen and Hill's notes, p. 425, 426; State vs Merrick, 19 Maine Rep. 400; 2nd Russell on Crimes, 122, 123, 124.

5. The circuit court should have permitted the plaintiff in error to give in evidence the warrant issued against Floyd and Barker jointly; also the indictment against said Barker, charging him with the same offence. It was competent for the plaintiff in error to show that another was suspected and charged with the offence, and thus rebut the presumption of guilt arising from possession, if any such presumption did arise. Furthermore, by our statute, where two or more are charged with having committed an offence jointly, they shall all be included in one indictment: Rev. Code of Mo. p. 869, sec. 15. Now, if it be contended that both Floyd and Barker were jointly engaged in the commission of the offence, and both are guilty, then this evidence was competent to show that they had not been charged as the statute requires, and sustains the position contained in the second instruction asked for by the plaintiff in error. But if it be contended that they committed the offence severally, or in other words, that one or the other is guilty, then evidence conducing to show that the other may have committed the offence, is competent.

6. The circuit court should have given the third instruction asked for by the plaintiff in error.

7. The circuit court should have given the fourth instruction asked for by the plaintiff in error.

8. The circuit court should have given the sixth instruction asked for by the plaintiff in error, for it is contended that unless Winston could swear with certainty to the loss of the goods, no prima facie case can, under any circumstances be made out, and the prisoner must be acquitted. To contend otherwise, would be to require the jury to be satisfied beyond a reasonable doubt of a fact which the prosecutor is not satisfied about, sufficiently to state it with any degree of certainty. From the fact that the plaintiff in error was charged with stealing a knife; (a charge which it turned out to be he was innocent) and from the fact that the goods were found in possession of Floyd, it is to be inferred is the only manner in which Winston came to the conclusion that the goods were stolen. It would be a dangerous rule to establish, for a man to be convicted for stealing goods of another, when the other is unwilling to swear with certainty that the goods are his. Winston's clerk, Mr. Elston, is not brought before the court. There is evidence that he was engaged as a salesman; that at times Winston was absent, and the goods left in the keeping of Elston. It may have well happened that the prisoner bought the goods of Elston. In support of the eighth proposition, the following authorities are cited: State vs. Furlong, 19 Maine Rep. 225; Roscoe's Crim. Ev. p. 643, 2nd Russell 122; 2 Phil. Ev.; Cowen and Hill's notes 423, 424.

9. The circuit court should have given the ninth instruction asked for by the plaintiff in error. It is in conflict with the second instruction given on the part of the defendant in error, but is nevertheless conceived to be the law. That although a presumption of guilt may be raised, the prisoner is not bound to show to the reasonable satisfaction of the jury, that he became possessed of the property otherwise than by stealing. That the evidence may fall far short of establishing that fact, and yet create in the minds of the jury a reasonable doubt of

The State vs. Floyd.

his guilt. Good character alone may create this reasonable doubt. The fact that another may have stolen the goods may create the doubt; yet the prisoner, after having shown these facts, may be totally unable to satisfy the jury that he became possessed of the property otherwise than by stealing. Besides the authorities already cited in support of the fourth proposition, I cite also The People vs. Mary A. Terrill, 1 Wheeler Crim. Cases, 34, 35; the same (People vs. Peter Meade) 36, 37; 2 Phil. Ev.; Cowen and Hill's notes, 426, 427.

10. The court should have given the seventh instruction, for it is based upon two questions of fact to be enquired into by the jury:

First, from the testimony of Winston, could they find that the goods were stolen?

Second, if they were stolen, who was the perpetrator of the crime.


## GARDENHIRE, Attorney General, for the State.

1. A petition for a change of venue must be supported by reasonable previous notice to the prosecuting attorney: Rev. statutes, 1845, 874. In this case, there was no notice at all. The record shows none, and the court will presume none. On the contrary, when the record is silent, this court will presume every thing necessary to sustain the decision of the court below: 5 Mo. Rep. 522.

2. A motion for a continuance is addressed to the sound discretion of the court, and the court will be held to have exercised that discretion soundly, unless it appear from the record that proper diligence has been used to procure the testimony, or good cause shown why such diligence has not been used: Scogin vs. Hudspeth, 3 Mo. Rep. 90; Steel vs. McCutchen, 5 Mo. Rep. 522, and particularly the opinion of the court in Freleigh vs. The State, 8 Mo Rep. 611.

In the case at bar, the prisoner swore roundly to the use of due diligence, without setting out the facts constituting diligence; unless the reception of a letter from the witness three weeks before constituted it. What the prisoner did to prepare for trial, was a question of fact, to be sworn to by him; the legal effect of what he did, whether constituting diligence or not, was a question of law to be determined by the court. To permit a prisoner to swear to the legal effect of what he has done, would be to strip the circuit court, in which the law has vested it, of all discretionary power in granting continuances, and vest it in the prisoner, who, above all others, may be most interested in its exercise. To such a case, the doctrine adverted to by Blackstone, that a man cannot be judged in his own case, might well apply.

In the case of Freleigh vs. The State, the affidavit was much stronger than in the case at bar. The court decided that "a plain and palpable case must be made out to authorize the interference of the supreme court," and that it was necessary to show that there was no other person whose attendance could have been procured to prove the same fact.

3. Amendments are not allowed as a matter of course, by our statute, but are only permitted at the discretion of the court, in furtherance of justice. The supreme court will not interfere with the exercise of a discretionary power, vested in the circuit court, unless, perhaps, under peculiar circumstances: Biggin vs. Collier & Pettus, 6 Mo. Rep. 572; Caldwell's adm'rs vs. McKee, 8 Mo. Rep. 335.

According to the practice in the King's Bench, an affidavit to hold to bail, after it was once made, could not be amended: 1 Bac. Ab. 327, B. 1.

By the printed rules of the Cole circuit court, an affidavit for a continuance cannot be amended. If an affidavit for a continuance be amendable, the discretionary power of the circuit court, if subject at all to the interference of this court, can scarcely be too cautiously supervised. The delay and inconvenience resulting from it, would be much more serious than in ordinary cases, and instead of advancing would, in most case, obstruct the administration of public justice.

The State vs. Floyd.

4. It was proper for the State to prove that defendant was found in possession of unusual quantities of other goods than those described in the indictment: 1 Phil. Ev. 169–70.

5. The warrant and indictment against Barker was properly excluded.

6 The second instruction, given for the State was correct: 1 Greenl. Ev. page 41; 1 Phil. Ev. 168–9.

7 The second instruction, asked for the prisoner, was properly refused. There was no evidence upon which to predicate it. The prisoner alone was charged with the larceny, and was alone on trial: Vaul vs Campbell, 8 Mo. Rep. 224.

8. The third instruction asked by the prisoner was properly refused. Though the principle it asserts may be correct, it was announced to the jury in other instructions: Williams vs. Vanmeter, 8 Mo. Rep. 339; 1 Phil. Ev 169, 170. First instruction given for the State.

9. There was as little to predicate the fourth instruction upon as the second. There was no evidence even tending to prove the prisoner guilty, as receiver of stolen goods. 8 Mo. Rep. 224.

10. The sixth instruction was wrong, and properly refused. It certainly was not necessary for Winston to swear positively to the loss of the goods. The loss of goods, in cases of larceny, may be proved like any other controverted fact, by either direct or indirect testimony. A different doctrine would exempt a large class of thefts from all punishment whatever To secure a conviction, it certainly cannot be necessary that the owner should actually see the thief take his goods; and yet it would be to require Winston to swear positively to a theft committed on a large stock of goods like his

11. The seventh instruction, asked for the prisoner, was directly at war with the second instruction asked for the State, the doctrine of which is well established in the books.

12. The doctrine of the eighth instruction would reduce the administration of criminal justice, in cases of larceny, to very narrow limits. None could be convicted so long as a possibilty of innocence existed.

13. The ninth instruction, though loaded down with many more words, when stripped to the naked principle embodies no more than the doctrince of the tenth, which was given.

14. The instructions given contain the law applicable to the case, and the evidence warranted the verdict of the jury. This court ought not to interfere: Lemp vs. Streiblein, 12 Mo. Rep. 457.

15. There is no bill of exceptions in this case, and this court cannot do otherwise, under its repeated decisions, than affirm the judgment.

16. If it be thought that the record shows a bill of exceptions, still it does not show that the evidence preserved was all the evidence in the cause. In the absence of such a statement in the record, this court will presume the existence of all evidence necessary to sustain the action of the court below.

RYLAND, J., delivered the opinion of the court.

It will be seen from the above statement, that various points have been raised in the court below, many of which will be passed by without notice.

The point in relation to the change of venue, is not supported by the decission of this court in the case of Reid vs. The State, 11 Mo. R. 379. In that case, it is obvious that Reid did give previous notice, and that he gave it as soon as he could after he became satisfied of the existance of the cause for which he sought the change of venue

It is the safer course for the party who wishes to change the venue, to

give the roasonable previous notice to the attorney general or circuit attorney, before the calling of the case, and not depend upon the filing such notice merely in open court with the clerk. We do not say, that this last method being done in time would not be sufficient, but the other is the surest and best.

As to the refusals of the court to continue this case, on the affidavit made by the defendant below, and the refusal to permit an amendment to be made to the affidavit, there is no error. In matters which address themselves to the discretion of the court, we must see very clearly an abuse of this power before we will reverse.

There is no error in the courts refusing to permit the defendant to give in evidence the warrant of the committing magistrate, or the indictment pending against Barker. This was clearly unadmissible. These minor points have been noticed in order that they may not again be brought here.

The instructions will now be noticed. This court will not reverse the judgement of the court below, for the refusal to give instructions, provided it appears from the record, that the law of the case has been laid down properly and fairly by the court, in the instructions which it did give to the jury. Instructions are to enable the jury to understand the law of the case. A few short, pithy and sententious instructions, embodying the law of the case, will always be better understood, and will have more effect upon the triers of fact, than a long list of instructions, loaded with words, generally so envolved that it tends to confuse rather than conduct the jury to a proper conclusion.

The second instruction, given by the court on the part of the State, which is as follows; "if goods to the value of ten dollars or more, described in the indictment, were stolen, and afterwards found in the possession of defendant, it is *prima facie* evidence of guilty possession, and if unexplained by him is conclusive evidence of his guilt," does not contain a proper exposition of the principle of law which, no doubt, the court designed to give. This proposition is too large; too unlimited. Had it been qualified by stating "recently" after the commission of the theft the goods were found in the possession of the defendant, such possession was *prima facie* evidence of guilt it would have been proper. But here there is no limit as to time. This point was decided by this court in St. Louis at the last October term, in the case of The State vs. Wolf, not yet published. Greenleaf says, "but possession of the fruits of crime recently after its commission, is *prima facie* evidence of guilty possession, and if unexplained, either by direct evidence or by the attending circumstances, or by the character an habits

of life of the possessor, or otherwise, it is taken as conclusive: 1 Greenl. Ev. sec. 34.

A theft having been committed, and the goods being soon after found either on the prisoner's person or in his house, &c., he is *prima facie* deemed guilty. Here, however, we must attend to several things; and first of the time: Lord Hale says, if the goods be found with the prisoner, the day of the theft being committed, this is a strong presumption; and yet, even in such a case, C., a very subtle horse thief, being pursued, procured B. to lead the horse under pretence that he, C. was pressed to go aside; thus escaping and leaving the presumption to fall on B., who was condemned and executed, though tried before a very learned and wary judge: 2 Hale's P. C. 289.

In the case of The State vs. Adams, Haywood's Rep. 1 vol. 464, the court said, where a horse is stolen and found in the possession of a man, at such a distance from the place where the horse was missing, in so short a time after, as shows he must have come directly from that place, and without any loss of time, that is such evidence as a jury may infer the guilt of the prisoner upon, as it raises a violent presumption against him that he was the taker. This principle is so generally understood that it is needless to cite authorities further. It must be recently, and this depends much on the nature of things stolen, both as to time and force of the presumption.

For this second instruction, therefore, the judgment of the court below must be reversed. This case is remanded to be further proceeded in according to the views of this court, the other judges concurring.