SMITH v. THE STATE.

CRIMINAL LAW.—Burglary.—Larceny.—Possession of Stolen Goods.—Presumption.—Instruction to Jury.—On the trial of a defendant indicted for burglary and larceny, where it appeared from the evidence, that the defendant was in possession of the stolen property shortly after the

theft, the court instructed the jury trying the cause, that, if the defendant has "failed satisfactorily to account" for such possession, or has "given a false account" of the same, "the law presumes that the defendant stole such property."

*Held*, that the instruction was erroneous, and had a material bearing on the cause, though the defendant was convicted of burglary only.

*Held*, also, that the inference or presumption arising from the possession of stolen goods is one wholly of fact, and not of law.

From the Gibson Circuit Court.

J. E. *McCullough* and L. C. *Embree*, for appellant.

C. A. *Buskirk*, Attorney General, W. H. *Trippet*, Prosecuting Attorney, and M. W. *Fields*, for the State.

NIBLACK, J.—The appellant, Edward Smith, was jointly indicted in the court below, with one John W. Sterne.

The indictment was in two counts: The first for burglary, and the second for grand larceny.

The first count charged, that the defendants, Smith and Sterne, on the 8th day of April, 1877, in the night-time, feloniously and burglariously entered the storehouse of one Theophilus Wright, with intent to steal, take and carry away the goods and chattels of him, the said Wright.

The second count charged the stealing, at the same time and place, of certain articles of the personal property of the said Wright, of the aggregate value of near twenty dollars, amongst which were two pocket-knives, of the value of one dollar each.

Smith, on a separate trial, was found guilty of burglary, as charged in the first count, and, over a motion for a new trial, was sentenced to imprisonment in the state-prison for three years.

On the trial, Sterne testified as a witness for the State, and, amongst other things, stated, that he and Smith, with two other persons assisting them, entered the storehouse of the said Wright, on the night charged in the indictment, being a Sunday night, and carried away the personal property enumerated in the second count of the indictment; that he took one of the pocket-knives, and

that Smith took the other, which was a white-handled knife.

Wright testified, that on Tuesday afternoon, after he lost the goods, Smith took him to one side and intimated that he, Smith, knew where the goods were secreted, speaking at the same time of Sterne as the person who . had the custody of them.

W. H. Evans testified, that five or six days after the burglary Smith exhibited to him a white-handled pocket-knife, which he, Smith, said had come from Wright's store, and which he claimed to have obtained from one of the parties implicated in the burglary; that Smith claimed that he exhibited this knife to show that he had found out and knew all about the burglary, because of a previous promise to Evans to try and find out about it.

Thomas J. Stott, who was present when the knife was exhibited, substantially corroborated Evans.

There was also evidence tending to show, that, in the meantime, Smith claimed to other persons to be in communication with, or to have some knowledge of, the persons who committed the burglary, and that he was seen, the Sunday following the burglary, with Sterne, at the barn where a portion of the goods were concealed.

Two witnesses testified to having played cards all night with Smith, at a place some distance away from the scene of the burglary, and to other circumstances tending to establish an *alibi* on the part of Smith. Another witness testified to some admissions of Sterne while in jail, conflicting with his statements while on the witness stand, implicating Smith in the burglary.

Four or five witnesses also testified to the bad character of Sterne for truth.

At the proper time the court gave to the jury several instructions in writing. In instruction known as No. 4, the court, in substance, said, that it is charged that the defendant broke and entered the storehouse, with the felonious intent to steal, take and carry away the goods and

chattels of Theophilus Wright. If you find that the defendant broke and entered the storehouse, and are ·satisfied from the evidence, beyond a reasonable doubt, that the defendant did feloniously steal, take and carry away the personal goods of said Wright from said storehouse, at the time the same was so broken and entered, then the jury would have the right to presume that it was his intention to steal such goods when he broke and entered the storehouse."

By instruction known as No. 7, the court further said to the jury: "If you should believe it to be true, that the goods mentioned, or some portion of them, were. stolen from Theophilus Wright, about the time charged in the indictment, and that, shortly after that time, they, or some portion of them, were found in the exclusive possession of the defendant, such possession imposes upon the defendant the duty and burden of explaining his possession; and if he has failed to satisfactorily account as to how he came by the stolen property, or has given a false account of how he came into possession of such stolen property, the law presumes that the defendant stole such property, and this presumption may be strong enough to justify you in finding the defendant guilty of larceny."

Although the appellant was convicted of the burglary, and not of the larceny, charged in the indictment, yet the course of the trial, including the instructions given by the court, made the question, as to whether the defendant had been guilty of larceny in connection with the burglary, a material one.

The appellant has devoted the greater portion of his brief to an argument to show that the court erred in giving instruction No. 7, as above quoted.

While the doctrine of this instruction may seem to be in substantial accord with some of the authorities which have fallen under our observation, we are of the opinion that it laid down a harsher rule than can be supported by the weight of modern authority.

In 3 Greenleaf Evidence, sec. 31, it is said: "We have heretofore adverted to the possession of the instruments or of the fruits of a crime as affording ground to presume the guilt of the possessor: but on this subject no certain rule can be laid down of universal application; the presumption being not conclusive but disputable, and therefore to be dealt with by the jury alone, as a mere inference of fact. Its force and value will depend on several considerations. In the first place, if the fact of possession stands alone, wholly unconnected with any other circumstances, its value or persuasive power is very slight; for the real criminal may have artfully placed the article in the possession or upon the premises of an innocent person, the better to conceal his own guilt. * * It will be necessary, therefore, for the prosecutor to add the proof of other circumstances indicative of guilt, in order to render the naked possession of the thing available towards a conviction." 2 Russ. Crimes, p. 337; Curtis v. The State, 6 Cold. 9; The State v. Brady, 27 Iowa, 126; The State v. Creson, 38 Mo. 372; The State v. Merrick, 19 Maine, 398; The State v. Floyd, 15 Mo. 349; Smathers v. The State, 46 Ind. 447; Turbeville v. The State, 42 Ind. 490.

In a prosecution for larceny, the fact that the stolen property is found upon the person of the defendant can always be given in evidence against him; but the strength of the presumption which it raises against the accused depends upon all the circumstances surrounding the case. Engleman v. The State, 2 Ind. 91.

In the case of The State v. Hodge, 50 N. H. 510, a leading and well-considered case, the Supreme Court of New Hampshire decided that the presumption thus raised was one of fact, and not of law; that there is no legal rule on the subject; that much depends on the nature of the property stolen, and the circumstances of each particular case; that "It is a presumption established by no legal rule, ascertained by no legal test, defined by no legal terms, measured by no legal standard, bounded by

no legal limits. It has none of the characteristics of law. Whether it be found by the judge or the jury, the judge and the jury must be equally unconscious of finding in it any semblance of a legal principle, however much good sense may appear in the result arrived at. Being a presumption of fact, it should, according to our practice, be drawn by the jury, and not by the court."

We regard this case as well supported by authority, and we feel it our duty to apply the doctrines enunciated by it to the case at bar.

We think the court erred in saying to the jury, as it did in substance, that, in the absence of a satisfactory explanation of the possession of the stolen property, the *law presumes* that the defendant had stolen it—such a presumption being an inference of fact merely, and not amounting to a rule of law.

Evidence in explanation of such possession may fall short of a satisfactory explanation, and yet be sufficient to acquit. If it creates a reasonable doubt, it practically rebuts the presumption of guilt. *Clackner* v. *The State*, 33 Ind. 412; *Way* v. *The State*, 35 Ind. 409.

The judgment is reversed, and the cause remanded for a new trial.

The clerk will give the proper notice for the return of the prisoner.