[Dotson v. The State.]

# Dotson *v.* The State.

*Indictment for Bigamy.*

| 62 | 141 |
| 98 | 21 |

1. *Challenge of array of jurors; what not ground for.*—It is not ground for challenge to the "array," or of motion to quash the venire for a petit jury, that the officers drew the grand and petit jurors at the same time, and as the names were taken from the box, placed them alternately on the grand and petit juries, according to their respective localities and standing in the county—no unfairness being charged, and jurors having proper qualifications.

2. *Charge, what properly refused.*—When a criminal intent is dependent on knowledge of particular facts, ignorance or mistake as to these facts, honest and real, not superinduced by the fault or negligence of the party doing the wrongful act, absolves from criminal liabilily ; and whether or not such belief is honest or feigned, and whether or not there was fault or negligence in not acquiring proper knowledge, are matters for the determination of the jury ; and a charge which instructs the jury that a mistaken belief as to facts, constitutes a defense, but withdraws from their determination the honesty of defendant's belief, and the diligence he had exercised to properly inform himself, is properly refused.

3. *Same.*—A charge requested, which requires explanation or qualification, or which has a tendency to mislead and confuse the jury, should be refused.

4. *Bigamy; what intent sufficient to support conviction.*—No other intent is necessary to support a conviction for bigamy, than that which must be inferred from the second marriage, knowing the first wife to be living, or not having a reasonable belief of her death; and a charge which, unexplained, would lead the jury to the conclusion that some other intent was necessary, is properly refused.

APPEAL from Limestone Circuit Court.

Tried before Hon. JAMES E. COBB.

The appellant, Silas Dotson, was tried and convicted of bigamy.

Before the trial in the court below commenced, the appellant " challenged the array of jurors, and moved the court to quash the venire sitting for his trial, on the ground that the judge of probate, clerk of the circuit court, and sheriff of Limestone county, drew the grand and petit jurors at the same time, and as the names of the jurors were taken from the box, placed them alternately on the grand or petit juries according to their respective localities and standing in the community."

It was admitted by the State that the grand and petit juries, of which that sitting for the trial of the appellant was one, were drawn in the manner stated in the above challenge and motion. The court overruled the challenge and motion, and appellant excepted.

The State then introduced a witness who testified that

[Dotson v. The State.]

the appellant was married to his first wife in Lincoln county, Tennessee, in 1868; that they lived together as man and wife for about five years; that his wife left appellant while they resided in Tennessee and returned to Limestone county, Alabama, to which place he soon came; that soon after her return to Limestone county his wife went to Arkansas, where she remained about six months; that a short while before appellant was married the second time, which was in March, 1879, she stayed in about four miles of where he then lived, but he did not know it. It was proved that about twelve months before the second marriage, the appellant had seen his first wife. The State then introduced one Collier, who testified that a month or two before the defendant married last, that he had a conversation with him; that he did not remember and could not repeat the words or language used by the defendant; that the conversation was about the first wife of defendant, in which they discussed where she lived, he, the witness, expressing the opinion that she lived a few miles off, beyond or below, the town of Athens. This witness further testified that the first wife had lived near the defendant and the witness a while after returning from Arkansas, though he, the witness, did not know of it till afterwards, and that she was now living.

It was admitted that the defendant was married the second time in Limestone county, in March, 1879.

It was also admitted, that if certain witnesses for the defendant were present, they would swear that in August and September, 1878, they told the defendant that his first wife was dead, and talked to him about the fact, and that several of these witnesses have been with the defendant frequently since, and knew of no circumstances or information he has received since, to the contrary.

This was all the evidence in the case, and the defendant requested the following written charges—1st. If the jury believe from the evidence, that at the time the defendant was married the second time, he believed his first wife was dead, then the defendant must be acquitted. 2d. The intent is a material ingredient of the offense. The court refused to give either of said charges, and the defendant separately excepted.

McClellan & McClellan, for appellant.

H. C. Tompkins, Attorney-General, *contra.*

BRICKELL, C. J.—It is the duty of the judge of probate, sheriff, and clerk of the circuit or city court, at least twenty

[Dotson v. The State.]

days before the holding of each regular term of the circuit or city court of the county, or a majority of them, to draw from the box containing the names of the jurors, the names of eighteen persons to serve as grand jurors, and of thirty persons to serve as petit jurors, each week of the term.—Code of 1876, §§ 4738-9. Specific directions as to the manner of drawing the jurors are prescribed, and of these is: "One of them must publicly draw out of the box, in the presence of the others, eighteen names for the grand jury, if the drawing is for a regular term, or for a special term at which a grand jury is required - and the requisite number for petit jurors," &c.—Code of 1876, § 4740. The challenge to the array, as it is termed in the bill of exceptions, and motion to quash the venire for the petit jury, made by the appellant in the circuit court, is rested upon the ground, that the officers "drew the grand and petit jurors at the same time, and as the names of the jurors were taken from the box placed them alternately on the grand or petit juries, according to their respective localities and standing in the county." The qualifications of grand and petit jurors are in all respects the same—each must be "a resident house-holder, or freeholder of the county, of the age of twenty-one years," competent to discharge the duties of grand and petit jurors "with honesty, impartiality, and intelligence, and esteemed in the community for their integrity, fair character, and sound judgment."—Code of 1876, §§ 4732-33. The statute contemplates that the drawing of grand and petit jurors shall take place at the same time; but in this respect, and in all its provisions prescribing the duties of the judge of probate, clerk, and sheriff, "in relation to the selection, drawing, and summoning of jurors," it is declared directory.—Code of 1876, § 4759. Whether the grand or petit jury is first drawn, is not material; no person not competent to serve on either jury can be selected, whether the one or the other precedes in point of time in the drawing. And as the qualifications of the jurors are the same, it can not be material that the officers, as the names were drawn, placed them alternately on the one panel or the other. Thereby, a distribution of the grand jury to the different parts of the county, may have been more certainly secured than if the grand jury had been first drawn. The statute does not command that the grand jury shall be first drawn, and it is no ground of objection to the panel of either grand or petit jurors, no unfairness being imputed to the officers drawing, that they drew grand and petit jurors at the same time, or at different times, or pursued the course which was observed in the drawing of the jury challenged by the appellant.—*Bowls v. State*, 51 Ala. 18. When, at com-

mon law, the petit jurors selected were unexceptionable, it was not matter of objection that others equally unexceptionable were excluded.—*People v. Jewett*, 3 Wend. 314. When petit jurors, free from challenge for cause, are drawn and selected by the proper officers, all the purposes of the law are satisfied.

2. Construed in connection with and in light of the evidence, the charges requested by the appellant were properly refused. The rule of the common law, of very general application, is that there can be no crime, when the criminal mind or intent is wanting. When that is dependent on a knowledge of particular facts, ignorance or mistake, as to these facts, *honest and real*, not superinduced by the fault or negligence of the party doing the wrongful act, absolves from criminal responsibility.— *Gordon v. State,* 52 Ala. 308; *Squire v. State,* 46 Ind. 459, (S. C. 2 Green. Cr. Rep. 725). The principle is thus stated by Bishop: "The wrongful intent being of the essence of every crime, the doctrine necessarily follows that, whenever a man is misled without his own fault or carelessness, concerning facts, and, while so misled, acts as he would be justified in doing were the facts as he believes them to be, he is legally innocent, the same as he is innocent morally."—1 Bish. Cr. Law, § 303. The belief must be *honest and real,* not *feigned,* and whether it is *honest* or *feigned,* the jury must determine in view of all the evidence. Whether there was fault or carelessness in acquiring knowledge of the facts, is also a matter for their determination. No man can be acquitted of responsibility for a wrongful act, unless he employs "the means at command to inform himself." Not employing such means, though he may be mistaken, he must bear the consequences of his negligence. If he relies on information obtained from others, he should have some just reason to believe that from them he could obtain information on which he may safely rely. It does not appear that the persons informing the appellant of the death of his first wife, had any opportunities of knowing the fact, he did not have, nor on what their knowledge of the fact was based— nor was it shown that he made inquiries of persons who, from their relationship or acquaintance with the wife, would have known whether she was living or dead. Bigamy is a violation of positive law, disturbs the peace of families, offends the good order of society, and involves the legitimacy of children, the descent and succession to estates. A degree of diligence commensurate with the importance of the act— a second marriage, having had a former wife, not so long absent and unheard of, that the law presumed her death, the appellant should have exercised. The charge requested,

withdrew from the consideration of the jury, the important inquiry, whether the belief of the death of the first wife was reasonable, and of the diligence the appellant had exercised to inform himself of the fact.

The second charge, without explanation, would have misled, or was well calculated to mislead, the jury. It would have induced, or is calculated to have induced, the belief that some other intent than that which must be inferred from the second marriage, knowing the first wife to be living, or not having a reasonable belief of her death, was an ingredient or element of the offense. A charge requested, which requires explanation or qualification, or which has a tendency to mislead or confuse the jury, should always be refused. There is no legal right to such an instruction. The charge in itself, when applied to the facts, is erroneous. A criminal intent is generally an element of crime, but "whatever one voluntarily does, he of course intends to do," and whenever an act is criminal under particular circumstances, the party doing the act is chargeable with the criminal intent.—*Com. v. Mash*, 7 Metc. 472; *Reynolds v. U. S.* 98 U. S. The appellant knew he had been once married—that the marriage had never been dissolved—that his wife had not been so long absent a presumption of her death could be indulged, and by the slightest diligence could have ascertained she was living within a few miles of him. A second marriage was a violation of the law, and he must be presumed to have intended the violation. We are satisfied no error was committed by the Circuit Court, and the judgment is affirmed.