## THE STATE v. CADWALLADER.

[No. 18,795. Filed May 29, 1900.]

CRIMINAL LAW.—*Banks and Banking.—Insolvency.—Embezzlement.* —Under §2031 Burns 1894 making it unlawful for an insolvent bank to receive a deposit from any person not indebted to it, the indebtedness of the depositor must be upon a claim or demand held by the bank against such depositor equal to or in excess of the deposit, and due from him at the time of the deposit. *p. 610.*

SAME.—*Banks and Banking.—Insolvency.—Embezzlement.—Evidence.* —In a prosecution under §2031 Burns 1894 making it unlawful for an insolvent bank to receive a deposit from any person not indebted to the bank upon a matured claim or demand to an amount equal to or in excess of the deposit, the State is not required to prove that such depositor was not indebted to any of the bank's officers. *pp. 610, 611.*

SAME.—*Banks and Banking.—Insolvency.—Embezzlement.—Evidence.* —In the prosecution of a bank official under §2031 Burns 1894 for receiving a deposit when the bank was insolvent, the State is not required to allege and prove that the officer knew that the bank was insolvent at the time he received the deposit as such want of knowledge is matter in defense. *p. 611.*

SAME.—*Banks and Banking.—Insolvency.—Embezzlement.—Knowledge of Officer.*—An officer of a bank who receives a deposit when the bank is insolvent in violation of §2031 Burns 1894 is not relieved from liability under the statute by his lack of knowledge of the insolvent condition of the bank where his ignorance of such insolvency was due to his own fault or negligence. *pp. 611, 612.*

SAME.—*Banks and Banking.—Insolvency.—Embezzlement.—Knowledge of Officer.—Presumption.—Evidence.*—The presumption that a bank official who had been president of the bank for three years knew of the insolvent condition of the bank at the time he received a deposit may be rebutted by evidence that in fact he, without his own negligence or fault, was ignorant of the true condition of the bank at the time the deposit was received. *pp. 612-616.*

State *v.* Cadwallader.

From the Randolph Circuit Court.   *Reversed.*

*W. A. Ketcham,* Attorney-General, *C. L. Hutchens, T. Hutchens, J. W. Ryan* and *W. A. Thompson,* for State.

*E. L. Watson, J. S. Engle, J. J. Cheney* and *T. Shockney,* for appellee.

JORDAN, J.—The appellee was charged by indictment with having violated the statute defining the crime of embezzlement by bankers and brokers.   A trial by jury resulted in his acquittal, and this appeal is prosecuted by the State upon the questions of law reserved by it relative to certain instructions given to the jury by the lower court on its own motion.

The evidence is not in the record, therefore, if the instructions of which the State complains can be said to be proper, upon any supposable evidence which might have been introduced upon the trial, under the issues in the case, this appeal can not be sustained.

It is first insisted by the appellee that the bill of exceptions embracing the instructions given by the court is not properly in the record.   An examination of the transcript discloses that the verdict of the jury was returned on the 18th day of November, 1897, the same being the 16th judicial day of the November term, 1897, of the Randolph Circuit Court.   A judgment thereon discharging the defendant was rendered on the same day.

The following entry appears in the proceedings: "And afterwards, to wit, on the 7th day of December, 1897, the same being the thirty-second judicial day of the November term, 1897, the following bill of exceptions was filed by the prosecuting attorney in the office of the clerk of the Randolph Circuit Court."   Immediately following this entry appears the bill of exceptions containing all of the instructions given in the cause.   The reason assigned by counsel for appellee that the bill in question is not in the record is that it does not appear that it was filed in the office of the clerk of the lower court.   This insistence is in no manner

supported by the record, but, upon the contrary, it is affirmatively disclosed that the bill was signed by the trial judge, and filed by the State in the office of the clerk during the term in which the cause was tried. Consequently, under the circumstances, there can be no question but what the bill is properly a part of the record.

The indictment in this case, among other things, charges that appellee was, on the 2nd day of May, 1896, president of an incorporated banking company by the name and style of the Citizens Bank, situated in Randolph county, Indiana, and doing a banking business therein; that appellee, on the said 2nd day of May, as such president, at the said county and State, unlawfully, feloniously, and fraudulently received from one Charles Shultz the sum of $60 as a deposit in said bank, said bank at that time being then and there insolvent, which fact of insolvency was then and there well known to the appellee; and that by reason of said insolvency the money so deposited was lost to the said Shultz, etc.

Section 2031 Burns 1894, upon which this prosecution is based, is as follows: "If any banker, or broker, or person or persons doing a banking business, or any officer of any banking company, or incorporated bank doing business in this State, shall fraudulently receive from any person or persons, firm, company or corporation, or from any agent thereof, not indebted to said banker, broker, banking company or incorporated bank any money, check, draft, bill of exchange, stocks, bonds, or other valuable thing which is transferable by delivery, when, at the time of receiving such deposit, said banker, broker, banking company or incorporated bank is insolvent, whereby the deposit so made shall be lost to the depositor, said banker, broker or officer, so receiving such deposit, shall be deemed guilty [of] embezzlement, and upon conviction thereof, shall be fined in a sum double the amount of the sum so embezzled and fraudulently taken, and in addition thereto may be imprisoned in the state prison not less than one, nor more than three years.

"The failure, suspension or involuntary liquidation of banker, broker, banking company or incorporated bank, within thirty days from and after the time of receiving such deposit, shall be *prima facie* evidence of an intent to defraud, ·on the part of such banker, broker·or officer of such banking company or incorporated bank."

The court's charge to the jury embraces forty-two separate instructions. In respect to these the State addresses its objections and criticism more especially to numbers six, thirteen, eighteen, and twenty-one. By the sixth charge the court enumerated and stated to the jury what essential facts the State was required to establish in order to justify a conviction of the accused. Among the facts enumerated by this charge, as necessary to be proved by the State in order to convict the defendant, are: (1) That at the time the deposit in question was made the bank in controversy was insolvent; (2) that at that time the depositor was not ·indebted to said bank; (3) that he was not indebted to any of the bank's officers; (4) that the defendant knew that the bank was insolvent. The charge closed with the statement that a failure by the State to establish any one of these facts beyond a reasonable doubt would require the acquittal of the defendant.

The first proposition is a correct statement of the law. The second may also be approved, with the exception that the jury ought to have been advised that the indebtedness of the depositor contemplated by the statute in question must be upon a claim or demand held by the bank against such depositor and due from him at the time of the deposit and equal to or in excess of the amount deposited. *State* v. *Beach*, 147 Ind. 74, 36 L. R. A. 179.

The insolvency of the bank and the absence of indebtedness to it upon the part of the depositor, as stated, were both, under the statute above set out, essential elements of the alleged offense for which the defendant was prosecuted in this action. Upon no view of the case, however, can the

third and fourth propositions embraced in the charge in controversy be sustained. While it is true that it was incumbent upon the State, as heretofore said, in order to establish the guilt of the accused, to prove that at the time of the deposit the depositor was not indebted to the bank, upon a matured claim or demand to an amount equal to or in excess of the deposit, still, the State was not required to go beyond this and also prove that such depositor was not indebted to any of the bank's officers. The trial court, by this statement to the jury, injected into the case a fact not legitimately at issue therein, and one upon which the successful prosecution of the defendant in no manner depended. In respect to the fourth proposition it may be said that the statute upon which this prosecution rests is silent in regard to the knowledge of the accused party of the insolvency of the bank at the time the deposit is received; and such knowledge can not be said to be such an essential fact of the offense as would require of the State to allege it in its pleading, and prove the same upon the trial, in order to secure a conviction. The absence of such knowledge, however, may be shown by the accused upon the trial, as a matter of defense, to justify his act in receiving the deposit when the bank was insolvent. Therefore, if, upon a consideration of all of the evidence given in a case upon a prosecution under the statute in dispute, it should appear that the accused party had no knowledge of the bank's insolvency at the time the deposit was made, or if a consideration of the evidence and all the legitimate inferences arising therefrom creates, in the minds of the jury trying the cause, a reasonable doubt as to the defendant's knowledge of such fact, then, in either event, he should be acquitted. If in fact, however, the one accused of the crime defined by this statute is really ignorant of the insolvent condition of the bank at the time the deposit is received, and such ignorance upon his part is not superinduced by his own fault or negligence, he may upon his trial avail himself of such want of knowledge as a defense to

relieve him of the evil intent to defraud, and thereby be absolved from criminal liability. *Squire* v. *State*, 46 Ind. 459; *Payne* v. *State*, 74 Ind. 203; 1 Bishop's New Crim. Law, §303.

By instruction thirteen the jury was informed that the president of the bank is presumed to know, and that it is his duty to know, whether or not his bank is solvent, and he is presumed to know all that the books of the bank disclose in regard to its liabilities, their character, and amount, and the date of their maturity, the assets of the bank, their extent, character, and value, and their availability to meet and pay the bank's liabilities as they may be presented to it in the ordinary course of its business. The instruction closes with the following statement: "This, however, is not a conclusive presumption. If, as a matter of fact, from negligence or any other reason, he does not know that it is insolvent, he can not be criminally responsible for such negligence."

The State assails (and properly so, we think,) this part of the charge which excuses the lack of knowledge of the insolvent condition of the bank upon the part of the defendant when it appears that his ignorance of such insolvency is due to his own negligence or fault. By this latter instruction the court, after stating to the jury, in effect, at least, that the defendant, as the president of the bank in controversy, was presumed to know whether or not it was solvent, and that it was his duty to know such fact, broadly advises them that if by reason of the defendant's negligence, or any other reason, he does not know that the bank is insolvent, he is not criminally responsible under such circumstances.

The statute, under which the defendant's bank is alleged to have been organized, provides that the directory shall elect one of their number president of the bank, and, as the defendant herein was the president of the bank, it may be assumed that he was also one of its directors. The very object or purpose of the statute is to prevent bankers, brokers and bank officials, by subjecting them to a criminal

prosecution, from receiving deposits when their bank is insolvent.

It is certainly evident that the solvency or insolvency of a banking institution is a matter which may be said to be peculiarly within the knowledge of its directors and its other managing officers, and it may therefore be presumed that its directory and such other managing officials, so long as they continue to operate the bank, know whether it is solvent or insolvent. Depositors, as a rule, have no means of accurately ascertaining the true financial condition of a bank, and they must necessarily act upon the presumption that the directors and the other officers thereof are not violating the law by keeping the bank open, and receiving deposits when it is insolvent. It is the imperative duty of such officers, when they receive deposits from the bank's patrons, to know that the bank is solvent, if, under the circumstances, by the exercise of reasonable diligence, such fact could have been ascertained. If, by the exercise of such diligence, in making an examination and inquiry in respect to the solvency or insolvency of the bank, its true condition could have been discovered, then, under such circumstances, the presumption will be that they had knowledge of the bank's condition at the time the particular deposit was received. When tested by the rule which we assert, it must be held that the defendant in this case, under the facts, was charged with the duty of knowing the condition of his bank at the time he received the deposit in question, and if at that time it was insolvent, the inference or presumption would arise that he, as such director or president, had knowledge of such insolvency.

While it is true that the defendant upon the trial would be entitled to rebut or overthrow this adverse presumption, still he would not be permitted to avail himself of his own negligence or carelessness as an excuse for want of knowledge in regard to the insolvency of the bank. Of course, if the accused person is ignorant of the insolvent condition of the bank, because sufficient time and opportunity have not

been afforded him to discover its true condition before re-
ceiving the deposit, a different question will be presented.
If the party charged with a violation of the statute in ques-
tion could be permitted to shield himself behind his own
negligence or carelessness, and thereby excuse his want of
knowledge of the bank's insolvency at the time the deposit
was received, then the statute which was designed to furnish
protection to depositors would be of no avail in securing such
protection.

In the case of *Meadowcroft* v. *People*, 163 Ill. 56, 45 N.
E. 303, 35 L. R. A. 176, the supreme court of that state, in
a prosecution under a statute which is substantially the same
as that upon which this prosecution is based, said: "If one
is a banker or person doing a banking business, and receives
on deposit the money of his customer, it is to be presumed
that he knows, at the time of receiving such deposit, whether
or not he is solvent. At all events, as he holds himself out
to the public and to his customers as being possessed of
money and capital, and therefore to be safely trusted, it is
his duty to know, and he is, under all ordinary circum-
stances, bound to know, that he is solvent, and it is criminal
negligence for him not to know of his own insolvency."

It can not be presumed that it was the intention of the
legislature, in the enactment of the statute in controversy,
to inflict a penalty upon a banker or bank official for receiv-
ing a deposit when at the time of receiving the same he was
actually ignorant of the bank's insolvency, by reason of his
not being afforded sufficient time and opportunity to dis-
cover that fact before receiving the deposit. See *State* v.
*Beach*, 147 Ind. 74, 83, 36 L. R. A. 179.

It may be asserted that when it appears that the person
accused of violating the statute in question is shown to have
exercised due diligence, under the circumstances, to acquaint
himself with the condition of the bank, but nevertheless, at
the time of receiving the deposit, he, considering all of the
circumstances, had good reasons to believe, and did honestly

believe, that the bank was solvent, then, under such circumstances, he will be absolved from criminal liability. *Squire* v. *State,* 46 Ind. 459; *Goetz* v. *State,* 41 Ind. 162; *Ward* v. *State,* 48 Ind. 289; *Payne* v. *State,* 74 Ind. 203.

The rule which obtains under such circumstances is well stated by an eminent author as follows: "The wrongful intent being the essence of every crime, it necessarily follows that whenever one without fault or carelessness is misled concerning facts, and thereon acts as he would be justified in doing were they what he believes them to be, he is legally innocent the same as he is innocent morally. The rule in morals is stated by Wayland to be that if a man 'know not the relations in which he stands to others, and have not the means of knowing them, he is guiltless. If he know them, or have the means of knowing them, and have not improved these means, he is guilty.' The legal rule is neatly enunciated by Baron Parke, thus: 'The guilt of the accused must depend on the circumstances as they appear to him.' " 1 Bishop's New Crim. Law, §303, sudb. 3; *Dotson* v. *State,* 62 Ala. 141, 34 Am. Rep. 2.

By charge eighteen the court instructed the jury that if they believed from the evidence, beyond a reasonable doubt, that the defendant had been a director and president of the bank in controversy continuously for three years prior to the day upon which he received the deposit in question, and that during all of said time he was in the active management and control of the business of the bank, and if they further believed from the evidence that the bank on that day was insolvent, then the presumption would be that the defendant knew of its insolvent condition, but that such presumption would not be conclusive, and that it might be shown as a matter of fact that the defendant did not know that the bank was insolvent. The objection urged by the State to this charge is that the court erred in advising the jury that the presumption, under the facts stated, in respect to the defendant's knowledge of the insolvency of the bank,

was not conclusive, but might be rebutted. The charge can not be held to be erroneous upon this ground for the defendant certainly had the right to overcome such adverse presumption by showing by legitimate evidence that, in fact, he, without his own negligence or fault, was ignorant of the true condition of the bank at the time the deposit was received. It may be said, however, in this connection that a trial court in charging a jury in respect to the presumption of a fact should not go further than to direct the attention of the jury to their right to draw the inference. It is not proper for the court to attach weight or value to such inference or inferences, as that is the exclusive province of the jury. *Smith* v. *State,* 58 Ind. 340.

By reason of the errors pointed out in the charge of the court, we are compelled to sustain this appeal at the cost of the appellee. Appeal sustained.

Monks, J., did not participate in the decision of this appeal.