WALTER *v.* STATE OF INDIANA.

[No. 26,300.   Filed April 16, 1935.]

*H. W. Mountz, Solon B. Selleck,* and *Claude Cline,* for appellant.

*Philip Lutz, Jr.,* Attorney-General, and *Ralph E. Hanna,* Deputy Attorney-General, for appellee.

FANSLER, C. J.—Appellant was convicted of embezzlement by receiving a deposit when the bank of which he was an officer was insolvent.

The first error assigned by appellant is that the court erred in overruling his motion to quash the affidavit. The motion to quash is based upon the theory that the statute under which he was prosecuted, section 2479,

Burns 1926, §10-1714, Burns 1933, §2476, Baldwin's 1934, does not cover embezzlement by officers of loan, trust, and safe deposit companies. This question was fully presented upon a situation identical in all respects with the one at bar, and settled adversely to appellant's contention, in the cases of *Green* v. *State* (1933), 204 Ind. 349, 184 N. E. 183, and *Gillian* v. *State* (1935), 207 Ind. 661, 194 N. E. 360.

Appellant challenged the array of the jury upon the ground that the jury commissioners who selected the names to be drawn as jurors did not perform their duties without favor or prejudice, and did not in such selection endeavor only to promote the impartial administration of justice, but purposely and intentionally selected names from certain classes of the qualified voters and citizens of the county whose names appeared upon the tax duplicate, and purposely and intentionally excluded the names of women from the names so selected. In support of the challenge, the jury commissioners were introduced as witnesses. They testified that they had an understanding that they would not select the names of women voters from the tax duplicate, although the names of women qualified for jury service did appear on the tax duplicate. One of the commissioners testified that they confined themselves to the selection of male voters because it had always been done that way, and that he understood if women were drawn there would be no place to separate them. The other commissioner testified that they selected all male voters only because he understood the judge wanted only men selected; that he did not think the judge said anything to him about the selection, but that he understood the judge had talked to the other commissioner, or that it might have been the clerk, and that they went according to that understanding. It is clear from the testimony that the jury commissioners for some reason

agreed in advance not to select women for jury service, and that the failure to select them was not due to accident or the absence of the names of qualified women upon the tax duplicate.

Section 4-3301, Burns 1933, §1266, Baldwin's 1934, provides for the appointment of jury commissioners "of good character for intelligence, morality and integrity," and provides that they shall take oath in the following form: "You do solemnly swear (or affirm) that you will honestly, and without favor or prejudice, perform the duties of jury commissioners during your term of office, that, in selecting persons to be drawn as jurors, you will select none but persons whom you believe to be of good repute for intelligence and honesty, that you will select none whom you have been or may be requested to select, and that, in all of impartial administration of justice." The second "you" impartial administration of justice.' " The second "you" quoted might well be italicized, for it is clearly intended that the commissioner shall personally perform the discretionary duties vested in him, and that he will select persons whom he personally believes to be of good repute for intelligence and honesty. The provision that he will select none whom he has been or may be requested to select, emphasizes the intention that his personal judgment shall control, and must be construed as broad enough to require that he shall not exclude a person or class that he may be requested to exclude.

Section 4-3304, Burns 1933, §1267, Baldwin's 1934, provides that the commissioners shall select the names of jurors "from the names of legal voters and citizens of the United States on the tax duplicate of the county for the current year," and this provision must be interpreted as requiring that the names shall be selected from the names of *all* of the qualified

legal voters on the tax duplicate. A purpose to procure the selection of jurors by disinterested commissioners, acting upon their own judgment, is clear and it is consistent with the very apparent policy of the statutes. The statute fixes the qualification of jurors, and had it been intended that women, or any other class otherwise qualified, should be excluded, the legislature would have spoken upon the subject. Since women are not excluded from jury service by the statute, it must be interpreted to mean that the legislature intended that they shall be considered for service upon the basis of their personal qualifications the same as men. Neither the judge nor any officer or person has power to control the action of the jury commissioners, nor should any person be permitted to influence them in the selection of jurors.

The jury commissioners have no power to exclude from jury service a class of citizens that the legislature has included among those eligible. That the qualifications of jurors is a matter of legislative control, and that women are eligible to serve as jurors upon the same basis as men, is settled. *Palmer* v. *State* (1926), 197 Ind. 625, 150 N. E. 917.

A jury not organized in accordance with the statute is an unlawful jury, and in support of a challenge it is not necessary to show that the members of the jury are not qualified jurors. *Stipp* v. *State* (1918), 187 Ind. 211, 118 N. E. 818.

It does not suffice to say that appellant can not show that his substantial rights were impaired, or that the jurors were biased or prejudiced against him, or that he did not have a fair trial. .Peremptory challenges are permitted where a defendant does not, and presumably can not, point to any bias or prejudice, or lack of qualification. For reasons, the sufficiency of which we may not question, the legislature has

seen fit to provide that a defendant shall have the right to a trial by jury, the names of the members of which are drawn from the jury box, and that the names which go into the jury box shall be selected by jury commissioners upon their own judgment from the names of the legal voters and citizens on the tax duplicate, which we construe to mean all classes of citizens and taxpayers whose names appear. This right may not legally be denied, and if it is denied we must presume that the defendant was prejudiced thereby. Any other rule would permit the jury commissioners, upon their own agreement, or upon suggestion, to exclude any class not only upon the basis of sex, but because of political affiliation, religious belief, ancestry, occupation, or location of residence, and we can see nothing that would prevent the exclusion of not only one, but numerous classes from jury service. This does not mean that all classes must be represented among the jurors selected. It does mean that the jury commissioners must exercise their own judgment and discretion in selecting the names, and that in making the selection they may not arbitrarily refuse to consider any class or classes of persons. The court erred in overruling the challenge of the array.

The statute defining the crime with which appellant is charged provides that the failure, suspension, or involuntary liquidation of the bank within thirty days after the time of receiving the deposit, which is charged to have been embezzled, shall be prima facie evidence of intent to defraud. The court gave a number of instructions based upon this provision of the statute. The fact that a bank fails, or is suspended, or goes into voluntary liquidation, within thirty days after a deposit is received, is not of itself evidence of insolvency thirty days before.

In the case of *Powers* v. *State* (1933), 204 Ind. 472, 184 N. E. 549, it was held to be error to permit proof that the defendant had no permit to carry a pistol, notwithstanding a statute to the effect that in the trial of a person charged with committing a felony against the property or person of another while armed with a pistol, the fact that the defendant was carrying the pistol without a permit shall be prima facie evidence of his intent to commit the felony with which he is charged. It was there held that the legislature has no power to declare that certain facts shall be prima facie evidence of the ultimate fact of criminal intent where such facts standing alone and without legislative enactment to aid them would not be sufficient to support a verdict. Evidence of the failure, or suspension, or involuntary liquidation of a bank, within thirty days after receiving a deposit, may be competent evidence tending to prove insolvency at the time of accepting the deposit, if it is connected with other facts and circumstances surrounding the transaction. But the judgment of a court that the institution was insolvent thirty days after accepting the deposit was held to be incompetent as evidence of insolvency in *Green* v. *State, supra.*

The cases cited deal with the competency of evidence, but here we are confronted with instructions in which the court told the jury that if the trust company ▮▮▮▮ suspended its business within thirty days after the time of receiving the deposit, such suspension is prima facie evidence that the company was insolvent at the time the deposit was received, and that it is prima facie evidence that the receiving of the deposit was unlawful, felonious, and fraudulent, and that such presumption, in the absence of evidence to the contrary, would warrant the conviction of the defendant.

Section 19 of article 1 of the Constitution of Indiana

provides: "In all criminal cases whatever, the jury shall have the right to determine the law and the facts." It has been repeatedly held, and is well settled, that it is error for the court in a criminal action to instruct the jury what evidence will be sufficient to establish any ultimate fact. Such an instruction is an invasion of the constitutional right of the jury to determine the facts for itself. The legislature has no more right to invade the province of the jury than the court, and it can not invest the court with power to invade the constitutional province of the jury. The giving of the instructions referred to was error.

Appellant predicates error upon the refusal of the court to give several tendered instructions to the effect that intent is a necessary element of the crime charged and must be proven beyond a reasonable doubt. Appellee contends that this question was covered by other instructions, and refers to the instructions we have just discussed, and to instruction No. 16, in which the court undertook to set out the material allegations of the affidavit, and the material facts which the state was required to prove. The part of the instruction touching knowledge or intent is, "that at the time he so received said deposit, the said LaGrange County Trust Company was insolvent, and that the defendant, Rollo N. Walter, knew that said trust company was insolvent, *or that by the exercise of ordinary care he could have known of such insolvency.*" (Our italics.) The theory of the state, which was adopted by the trial court, and which affected many of the instructions, is here clearly disclosed. It is in effect that simple negligence, that is to say carelessness, failure, or neglect on the part of a banker or broker, or any officer, agent, or employee of a banking company, to discover what a reasonably prudent person might have discovered in the

exercise of ordinary care, is sufficient, and that knowledge of insolvency or a fraudulent intent need not be proven; that a presumption of fraudulent intent arises from negligence and that "while it is true that the defendant upon the trial would be entitled to rebut or overthrow this adverse presumption, still he would not be permitted to avail himself of his own negligence or carelessness as an excuse for want of knowledge in regard to the insolvency of the bank." The theory we assume to have been taken, with the quotation, from the case of *State* v. *Cadwallader* (1900), 154 Ind. 607, 57 N. E. 512. Appellant contends that fraudulent intent is an element of the crime, and that mere failure to acquire knowledge of facts involving only negative negligence, perhaps only lack of industry, or laziness, does not imply fraudulent intent.

It is said in the Cadwallader case that the statute is silent in regard to knowledge of insolvency, and that such knowledge can not be said to be an essential of the offense, and that "the very object or purpose of the statute is to prevent bankers, brokers and bank officials, by subjecting them to a criminal prosecution, from receiving deposits when their bank is insolvent"; and that, "if, by the exercise of such diligence, in making an examination and inquiry in respect to the solvency or insolvency of the bank, its true condition could have been discovered, then, under such circumstances, the presumption will be that they had knowledge of the bank's condition at the time the particular deposit was received." It will be observed that, while it is said that knowledge is not a necessary ingredient of the crime, it is also inconsistently said that a presumption of knowledge will arise from a failure to exercise diligence to discover the condition of the bank, which latter proposition would justify the inference that knowledge is an

essential element. It is clear, however, that the statute does not declare against simply receiving a deposit when the bank is insolvent. It declares against "fraudulently" receiving such a deposit. That the legislature contemplated proof of a fraudulent intent is clearly indicated by the last clause of the statute, which seeks to establish insolvency within thirty days after the deposit is received as prima facie evidence of an intent to defraud. If proof of a fraudulent intent was not contemplated this language would not have been used, and if the mere accepting of a deposit when a bank is insolvent was intended to be declared against, the word "fraudulently" would not have been used.

Fraud is distinguishable from mistake or negligence. "Deceit excludes the idea of mistake, and fraud has been termed a grosser species of deceit. Deceit is a fraudulent misrepresentation, by which one man deceives another, to the injury of the latter." *Farwell* v. *Metcalf* (1871), 61 Ill. 372; *Matador Land & Cattle Co.* v. *State* (1899), 54 S. W. (Tex.) 256.

"Fraud is a malfeasance, a positive act resulting from a willful intent to deceive; negligence is strictly nonfeasance, a wrongful act resulting from inattention and not from design. . . . Negligence, whatever be its grade, does not include a purpose to do a wrongful act." 26 C. J. 1060.

While it is true that the opinion in the Cadwallader case deals with instructions involving a presumption of knowledge and criminal intent from facts showing negligence, the following language is used in conclusion: "It may be said, however, in this connection that a trial court in charging a jury in respect to the presumption of a fact should not go further than to direct the attention of the jury to their right to draw the inference. It is not proper for the court to attach weight or value

to such inference or inferences, as that is the exclusive province of the jury." In view of this language the opinion can only be construed as holding that the jury may draw the inference and presume that the defendant had knowledge of insolvency, and therefore a fraudulent intent, if there were facts subject to his observation which would have disclosed the insolvent condition.

It is well settled by decisions of the Supreme Court of the United States that a statute which seeks to create a presumption of fraud in a criminal case without evidence of fraud in fact, but simply upon evidence of facts which do not necessarily indicate fraud, is unconstitutional. *Bailey* v. *Alabama* (1911), 219 U. S. 219, 31 S. Ct. Rep. 145; *McFarland* v. *American Sugar Refining Co.* (1916), 241 U. S. 79, 36 S. Ct. Rep. 498; *Manley* v. *Georgia* (1929), 279 U. S. 1, 49 S. Ct. Rep. 215.

And if such a state of facts can not sustain a presumption, it can not sustain a conviction.

The last case cited involved a statute of the State of Georgia, which provided that every insolvency of a bank is presumed to be fraudulent, and the directors of every insolvent bank punishable as for a felony, provided the defendant may repel the presumption of fraud by showing that its affairs have been fairly and legally administered with the same diligence and care that paid agents are required to observe. It was held that the presumption of fraud from the mere fact of insolvency was unreasonable and arbitrary, and that the defendant could not lawfully be charged with a duty to repel it, and that such a statute was in contravention of the due process clause of the Fourteenth Amendment to the federal Constitution.

Under our Constitution the question of what facts are necessary to establish the ultimate fact of fraud can be determined only by the jury.

It was said in the Cadwallader case "that the solvency or insolvency of a banking institution is a matter which may be said to be peculiarly within the knowledge of its directors and its other managing officers." But a mere teller can not reasonably be said to have such knowledge, and the statute brings within its terms every employee of a bank who may receive a deposit, from the highest to the lowliest and most inexperienced teller. A bank employee commits no wrong when he receives a deposit. It is a perfectly lawful act. Banks are required to show a solvent condition before they begin transacting business. They must report their condition periodically to governmental supervising agencies, and they are examined periodically by those agencies for the purpose of ascertaining whether they are solvent, and, upon the discovery of insolvency, the examining officers and the officers of the bank are required by law to immediately close the institution. It is probably true that the average employee of a banking institution assumes that it is solvent when its daily balance sheet shows solvency and until some fact or facts come to his attention in the ordinary course of his business duties which put him upon inquiry or raise doubts in his mind as to its solvency. When such a situation arises it can hardly be said that he has no knowledge of insolvency. Accepting a deposit with knowledge of insolvency is unlawful and therefore fraudulent. But the question of whether the defendant had knowledge is for the jury to determine from all of the facts and circumstances in the case, and if there are facts indicating insolvency, which in the ordinary course of business would naturally come to the attention of the defendant in the exercise of ordinary care, the jury may determine from these facts and the surrounding circumstances whether or not the defendant did have

knowledge. The jury may infer knowledge, and hence fraudulent intent, from existence of facts which would disclose insolvency to the defendant in the exercise of ordinary care in the performance of his functions as an officer or employee of the bank. But for the court to draw such an inference, and instruct the jury accordingly, is invading the province of the jury.

Appellant complains of the court's instruction on the question of insolvency because it did not take into consideration the value of the assets to the company as a going concern. But if such going-value is an asset in the sense that it could be realized upon in cash within a reasonable time, it is covered by the instruction, and, if it has no such value, it can not be considered as an asset.

Appellant complains of an instruction in which the jury was told that if for any period of time the right to draw checks against the deposit was lost it would be sufficient to establish that the deposit was lost. The same instruction was passed on and held erroneous in *Gillian* v. *State, supra.*

The receiver for the bank testified as a witness. He was permitted to testify that the makers of certain notes which had been assigned to the bank told him that they had not signed the notes, and in other cases that they would not pay the notes for the reason that they had surrendered the consideration and did not feel obligated to pay; and, incident to his testimony, a letter from an insurance company, in which the company said that premiums had lapsed on a certain insurance policy which was held by the bank as collateral security, was permitted to go into evidence. The jury was instructed that this evidence was admitted solely upon the question of the solvency of the bank, and was not to be considered for any other purpose. The

objection is that it was hearsay, and that the statements were made out of the presence of the defendant. The purpose of the evidence was to show the value of the assets of the bank. The fact that certain creditors were disputing their liability affected the value of the assets. Only part of the evidence is here, and we must assume in favor of the court's ruling that the witness had given his opinion as to the value of the assets in question. The rule is that where witnesses give opinion evidence, the facts upon which they base their opinion may be shown in order that the jury may weigh the opinion in the light of the facts upon which it is based.

A number of instructions tendered by appellant were refused. They cover reasonable doubt and other questions upon which the jury was instructed. They may have been refused because argumentative, but the subject-matter was covered by proper instructions, and there was no error in refusing them.

Judgment reversed, with instructions to sustain appellant's motion for a new trial.