JACOBS *v.* STATE OF INDIANA.

[No. 26,494.  Filed April 30, 1936.]

*Mountz & Mountz, Walter D. Stump, Dardley W. Gleason* and *Samuel E. Hirsch,* for appellant.

*Philip Lutz, Jr.,* Attorney-General, and *Caleb J. Lindsey,* Deputy Attorney-General, for appellee.

FANSLER, J.—Appellant was indicted for the crime of banker's embezzlement, which consists in accepting a deposit when a bank is insolvent. Upon the first trial the jury disagreed. Upon the second trial appellant was convicted.

Error is predicated upon the overruling of a motion for a new trial.

The following instruction was given:

"In determining whether or not the deposit charged to have been made was unlawfully, feloniously and fraudulently received by the defendant, Milton K. Jacobs, it is the law that if such Banking Company was insolvent at the time such deposit was received, and such insolvency was known to the defendant, or if the defendant could have known of such insolvency, if such insolvency in fact existed, by the exercise of ordinary care and diligence to ascertain such fact, if such fact existed, then such deposit was unlawfully, feloniously and fraudulently received by the defendant, whether the defendant did or did not actually at the time intend to defraud the depositor.

"If you find from the evidence that the Noble County Bank and Trust Company suspended its business within thirty days from the time of receiving such deposit, then such suspension is prima facie evidence that the taking and receiving of such deposit was unlawful, felonious and fraudulent, and such presumption, in the absence of evidence to the contrary, would warrant the conviction of the defendant, so far as this element in the charge in the affidavit is concerned.

"The absence of such knowledge on the part of the defendant, of insolvency, if such insolvency in fact existed, would prevent the conviction of the defendant in this cause, unless such lack of knowledge was the result of a lack of ordinary care and diligence on his part to ascertain the true condition of such Banking Company at such time."

The theory upon which the case was tried is disclosed by this instruction and others of a similar character.

In *Walter* v. *State* (1935), 208 Ind. 231, 195 N. E. 268, it was held that the statute which provides that a bank's failure, suspension, or involuntary liquidation within thirty days after a deposit is received constitutes prima facie evidence of fraudulent intent in receiving the deposit, is an invasion of the constitutional right to have the jury determine the facts; and in the same case it is held that the embezzlement statute contemplates proof of fraudulent intent, and that proof of mere negligence, or lack of ordinary care to ascertain the bank's condition, is not sufficient. Upon the authority of that case, in which the several instructions involving these questions are almost identical with the ones in the case at bar, this case must be reversed.

In *Green* v. *State* (1933), 204 Ind. 349, 184 N. E. 183, and *Powers* v. *State* (1933), 204 Ind. 472, 184 N. E. 549, 86 A. L. R. 166, the questions presented involve the admissibility of testimony, and it was held that incompetent evidence may not be made competent and admissible by legislative enactment; that the legislature may not create evidence, or make something evidence of a fact which is not of itself evidence of that fact. In *Walter* v. *State, supra,* and *Gillian* v. *State* (1935), 207 Ind. 661, 194 N. E. 360, instructions were considered, and it was held that, under the Constitution, neither the legislature by enactment nor the court

by instructions may determine what is prima facie evidence of an ultimate fact, that is to say sufficient evidence to establish an ultimate fact, such as criminal intent. Any instruction, whether or not it is based upon a legislative enactment, which undertakes to tell the jury that certain evidence is sufficient to establish the ultimate fact of criminal intent, or any other ultimate fact, or to create a presumption of such an ultimate fact, invades the constitutional province of the jury.

The case of *State* v. *Beach* (1897), 147 Ind. 74, 43 N. E. 949, 46 N. E. 145, relied upon by the state, was modified in *Green* v. *State, supra,* and expressly overruled in *Powers* v. *State, supra.* The other case relied upon, *State* v. *Cadwallader* (1900), 154 Ind. 607, 57 N. E. 512, is criticized in *Walter* v. *State, supra,* where it is pointed out that the court went no further than to say that: "It is not proper for the court to attach weight or value to such inference or inferences, as that is the exclusive province of the jury." The case should not be considered as authority upon any proposition inconsistent with the language quoted. There are certain statements in *Green* v. *State, supra,* which were made for the purpose of defining the state's position upon the power of the legislature to declare certain facts prima facie evidence, and pointing to the authorities brought forward to sustain the position. But the constitutionality of the statute there in quesion was not passed upon. It was held that the evidence offered was incompetent, regardless of the constitutionality of the statute.

The jury was instructed that, if the depositor was deprived of her right to draw checks on account of her deposit, or any part thereof, for any period of time, because of the suspension of the bank, the deposit was lost to her within the meaning of the statute. The same instruction was held erroneous in *Gillian* v. *State, supra,* and, upon authority of that case and *Smith* v. *State*

(1932), 203 Ind. 561, 181 N. E. 519, the giving of the instruction must be held to be reversible error.

The jury was instructed that, if the defendant received the check in question as a deposit, and the depositor was not then indebted to such banking company in any sum in excess of the amount of the check deposited, the statute which declares against accepting a deposit from one who is "not indebted to such banking company," would be satisfied. It is contended that, under the statute, there can be no guilt in accepting a deposit, no matter how large, from one who is indebted to the banking company in any amount, no matter how small. The purpose of the statute is to punish where deposits are received with knowledge of insolvency, and to the loss of the depositor. If a deposit is made which may be set off against an indebtedness there is no loss, and the statute clearly intends in such case that there is no criminal liability. But where there is an indebtedness, and a deposit is accepted which is in excess of the indebtedness, and the excess or part of it is lost, the acceptance of the deposit must be treated as within the terms of the statute.

Error is assigned upon the overruling of defendant's challenge to the array of the jury. It appears from the evidence of one of the jury commissioners that, in selecting the names of jurors to be placed in the jury box, no women were included; that the commissioners were not requested to select women, nor were they requested to select men only; that "it was on our own initiative and conclusion that we selected only men." He testified that women were excluded from those selected because females had never been used on juries in Steuben county. It is insisted that the jury was unlawfully drawn, and *Walter* v. *State, supra,* is cited as authority for this position. It is held in that case that women, or any other class, may not be arbitrarily

excluded in the selection of a jury; that jury commissioners must personally perform the discretionary duties vested in them; that the names selected for jury service must be selected from all of the qualified legal voters on the tax duplicate, but that this does not mean that all classes must be represented among the jurors selected. "It does mean that the jury commissioners must exercise their own judgment and discretion in selecting the names, and that in making the selection they may not arbitrarily refuse to consider any class or classes of persons." The question here presented is whether the jury commissioners arbitrarily excluded women. That is a question of fact which was determined in the negative by the trial court. The trial judge heard the commissioner testify, and had the opportunity to observe him, and to weigh all of the evidence given. It may be difficult for a jury commissioner, acting in good faith in an effort to select the best possible names for jurors, to explain the mental processes which resulted in the selection that was made, and resulted in the exclusion of all other names. But if the selection was made in a good-faith exercise of the discretion vested in the commissioner, a violation of his statutory duty will not be assumed because of the result. It cannot be said as a matter of law that the evidence required that the challenge be sustained.

Judgment reversed, with instructions to sustain appellant's motion for a new trial.