### DIXON *v.* STATE OF INDIANA

[No. 28,156. Filed June 10, 1946.]

*Lockyear & Lockyear,* and *Paul Wever,* all of Evansville, for appellant.

*James A. Emmert,* Attorney General, *Frank E. Coughlin,* First Assistant Attorney General, and *Forrest W. Lacey, Jr.,* Deputy Attorney General, for the State.

GILKISON, J.—Appellant was charged by indictment, tried and convicted of first degree murder, in the Vanderburgh Circuit Court. The trial began January 10, 1945. At the appropriate time appellant filed his written challenge to the entire array of prospective petit jurors, alleging in substance as follows:

1. That said array of prospective jurors was not selected according to law.

2. That said array was selected in such a manner as to violate the constitutional rights of the defendant and to deny him the equal protection of the law guaranteed by the Fourteenth Amendment of the Federal Constitution.

In support of the challenge, among other things, he says he is a negro. That the population of Vanderburgh County is between 110,000 and 140,000, of whom from 6,000 to 10,000 are negroes, and of these negroes more than 2,000 are qualified for jury service in the county. The remaining population is composed almost entirely of white persons of whom from 10,000 to 20,000 are qualified for jury service.

. That the present jury commissioners and their predecessors for a period of more than five years immediately last past, by means unknown to petitioner, have filled

the jury box for the December, 1944, term of the Vanderburgh Circuit Court and for the special venire drawn in this cause, and for all juries in the county, with names of white citizens only, and that all negroes were systematically and arbitrarily excluded, solely upon the fact of their race or color. That the exclusion of qualified negro jurors has been systematic, arbitrary, and long-continued, and has amounted to a wholesale exclusion of negroes from jury service in the county on account of their race and color. That these facts are matters of common knowledge within the county, and the exclusion of members of defendant's race from jury service in the county, constitutes a denial of the equal protection of the law guaranteed petitioner by the Fourteenth Amendment of the Constitution of the United States.

Wherefore, the petitioner challenges the entire array of prospective jurors called in this cause.

A hearing was had on appellant's challenge. To sustain the same appellant called as witnesses the following: Clyde Oviatt, the court bailiff who had served for two years beginning January 1, 1943, testified, among other things, that during that time he had attended each jury trial held in the Vanderburgh Circuit Court; that approximately 20 to 25 criminal jury trials were had, and that no person of the colored race had been called for jury service in that court during that time.

Harold Huck testified that he was bailiff of that court for a period of ten years immediately prior to January 1, 1943. There were quite a number of criminal cases tried during that time. Some persons—very few—of the colored race were on the jury panel, but none ever served. None ever came into the court room to be examined as a prospective juror.

Ed J. Sauer testified: That he had been Chief Deputy Clerk of the Vanderburgh Circuit Court since January, 1933, and for a number of years last past had been present when juries were selected to try criminal cases. He was asked, "During the time you have been Chief Deputy Clerk, have you ever seen any person of the colored race serve upon any criminal jury in the Vanderburgh Circuit Court?" The state's attorney objected to the question, whereupon the court, addressing appellant's counsel, stated: "I think you will be confined entirely to the conduct of the court and the officers with reference to this jury and not what has been done in the past. Objection sustained."

After a statement by appellant's counsel, the court said: "This court takes the position that I am ready to hear any proof which you may have to show that there has been any discrimination on account of race in the selection of juries in the last two years. Objection sustained."

The witness then testified: that he had known of no colored person serving upon any jury in the Vanderburgh Circuit Court in criminal cases from January 1, 1943, until the present time. He did not know whether any had been called as prospective jurors during that time.

Sina McGill testified she had been a jury commissioner of Vanderburgh County since January 1, 1943. She and the other jury commissioner select the names for jurors off the tax schedules in both assessor's offices, which comprise the records of the three commissioner's districts. They selected the names they thought would make good jurors, and that would serve. The assessor's records did not always show whether the persons selected were white or colored. They never discriminated between

the races. She did not know how it happened that no colored person had been drawn as a prospective juror during the time she had served as a jury commissioner. She said, "for no particular reason, no colored person has been selected as a prospective juror in the Vanderburgh Circuit Court in the last two years."

M. D. Banks testified that he is a minister, and has resided in Vanderburgh County approximately 10 years. He frequently attended trials of criminal cases in the courts including the circuit court. That he has not seen or known of any person of the colored race serving as a juror in Vanderburgh County, or called as a prospective juror. There are from 7,000 to 12,000 colored persons in the county, many of whom are qualified voters of the county and householders or freeholders.

John Wesley Appleby testified that he is a minister. That he has lived in Vanderburgh County for eight years past, and during that time has attended numerous trials of criminal cases in the courts of the county, and never saw a person of his race on a jury, and never knew of one being called for jury service. The population of the county is about 120,000 persons of whom between 6,000 and 12,000 are colored and hundreds of these are householders and freeholders of the county.

The State presented as its only witness, Earl Shrode, who testified that he has been a special deputy sheriff working out of the Vanderburgh Circuit Court for the past two years. He has summoned persons for jury service in the circuit court during that time. About March 1, 1943, he tried to serve a "jury subpoena" on a colored man whose name he could not recall. A colored lady came to the door. In answer to his inquiry, the lady told him the man he was looking for was her father and that he was dead. That is the only instance

he could recall. During the past two years no colored person had been in the court as a prospective juror.

The court declined to hear argument, and thereupon overruled appellant's challenge.

By his motion for new trial and assignment of error appellant properly questions this ruling. No other question is attempted to be presented.

We are mindful of the fact that the lower court has heard the evidence and determined that it was not sufficient to justify the challenge. In this situation we cannot weigh the evidence, but we are required to examine it to ascertain if there is any evidence or proper inference to support the ruling.

So far as applicable to this case § 1 of the Fourteenth Amendment to the Federal Constitution is as follows:

". . . No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

To further implement this amendment, on March 1, 1875, Congress enacted a law which ever since has been, and is now in effect, as follows:

"No citizen possessing all other qualifications which are or may be prescribed by law shall be disqualified for service as grand or petit juror in any court of the United States, or of any State on account of race, color, or previous condition of servitude; . . ."

8 U. S. C. A., § 44, p. 18.

In this appeal there is no contention that the laws of the State of Indiana with reference to the selection of

either grand jurors or petit jurors, §§ 4-3301 to 4-3319, Burns' 1933, in any manner infringes the Fourteenth Amendment. The essence of the challenge is that these laws are so administered in Vanderburgh County by the administrative officers chosen to select the names that are placed in the jury box, and who draw the names therefrom, that the names of no negroes are placed in the jury box, or at least no such names are drawn therefrom, and that thereby appellant's rights under the Fourteenth Amendment as a negro being tried for a major felony, are effectually destroyed. In this, the case is similar to *Pierre* v. *State of Louisiana* (1938), 306 U. S. 354, 59 S. Ct. 536, 83 L. Ed. 757.

On this particular subject the Supreme Court of the United States in *Smith* v. *State of Texas* (1940), 311 U. S. 128, 130, 131, 61 S. Ct. 164, 165, 85 L. Ed. 84, has recently said:

"It is part of the established tradition in the use of juries as instruments of public justice that the jury be a body truly representative of the community. For racial discrimination to result in the exclusion from jury service of otherwise qualified groups not only violates our Constitution and the laws enacted under it but is at war with our basic concepts of a democratic society and a representative government. . . . The fact that the written words of a state's laws hold out a premise that no such discrimination will be practiced is not enough. The Fourteenth Amendment requires that equal protection to all must be given—not merely promised. . . . Chance and accident alone could hardly have brought about the listing for grand jury service of so few negroes from among the thousands shown by the undisputed evidence to possess the legal qualifications for jury service."

The Federal Constitution is the supreme law of the land, and "Upon the state courts, equally with the courts

of the Union, rests the obligation to guard and enforce every right, secured by that Constitution." *Smith* v. *O'Grady* (1940), 312 U. S. 329, 331, 61 S. Ct. 572, 573, 85 L. Ed. 859, 861; *Mooney* v. *Holohan* (1934), 294 U. S. 103, 113, 55 S. Ct. 340, 79 L. Ed. 791, 794 (Head note 4), 98 A. L. R. 406; *Robb* v. *Connolly* (1883), 111 U. S. 624, 637, 4 S. Ct. 544, 28 L. Ed. 542.

The action of administrative officers in the execution of state laws, may constitute state action within the purview of the Fourteenth Amendment. That Amendment governs any action of a state, "whether through its legislature, through its courts, or through its executive or administrative officers." *Mooney* v. *Holohan, supra,* 294 U. S. at page 113 (Head note 3), 55 S. Ct. at page 342, 79 L. Ed. 791, 98 A. L. R. 406, and cases cited; *Pierre* v. *State of Louisiana, supra*; *Hill* v. *State of Texas* (1941), 316 U. S. 400, 404, 62 S. Ct. 1159, 86 L. Ed. 1559, 1562; *Hale* v. *Commonwealth of Kentucky* (1938), 303 U. S. 613 and Anno. 58 S. Ct. 753, 82 L. Ed. 1050; 31 Am. Jur., §§ 83 and 86, *Jury* pp. 617, 619.

When, as in this case, a claim is properly and timely asserted that a citizen whose life is at stake has been denied the equal protection of his country's laws on account of his race, it becomes our duty to make inquiry and determination of the facts presented in support of the claim, for equal protection to all is the basic principle upon which justice under law rests. *Pierre* v. *State of Louisiana, supra* (Head note 2, p. 358, of 306 U. S., 59 S. Ct. at page 538, 83 L. Ed. 757). Equal protection of the laws is more than an abstract right. It is a command which the state must protect, the benefits of which every person may demand. It

is a safeguard of our constitution which extends to all —the least deserving as well as the most virtuous. *Hill v. State of Texas, supra* (Head note 4, p. 406, of 316 U. S., 62 S. Ct. at page 1162, 86 L. Ed. 1559).

The trial court limited the inquiry in this case to a period of two years last preceding the date of the trial— January 10, 1945. The undisputed evidence is that no negro had been on a jury in the courts of the county during this period. With possibly a single exception none had ever been drawn from the jury box for jury service. A special deputy sheriff working out of the Vanderburgh Circuit Court during the period under inquiry once during that period had a jury subpoena for a negro, but on careful inquiry he learned that this man was dead.

We are, like the jury commissioner who testified, at a loss to know why, during the period under inquiry, no negro was ever drawn for jury service. Nor can we understand why the one jury subpoena for a negro which came to the special deputy sheriff for service during this period, turned out to be for a dead man. With every opportunity to show how this occurred, the State was content to rely upon the idea that it was merely coincidental, or "for no particular reason" as stated by the jury commissioner who testified. However, it remains an undisputed fact. Whether the jury commissioners intended to discriminate against negroes or not, their action has resulted in a noticeable discrimination. A similar case from the same county was before this court in a *coram nobis* proceeding in *Swain* v. *State* (1939), 215 Ind. 259, 18 N. E. (2d) 921. The evidence before the court in that case showed that some negroes had been drawn on juries in the courts of the county during the period then under investigation, and this court held that the evidence did "not establish that

clear showing of error of fact that would justify us in disturbing the exercise of the trial court's discretion." In the instant case the question was properly and timely raised and presented. The trial on the challenge to the entire array of jurors was had and determined by the court, prior to the hearing of the case on its merits. No question as to the guilt or innocence of the defendant is presented. His guilt or innocence cannot affect his constitutional right to "due process" and "equal protection" of the law. *Hill* v. *Texas, supra.* (Head note 2, p. 406, of 316 U. S. at page 1162 of 62 S. Ct., 86 L. Ed. 1559) ; *Tumey* v. *State of Ohio* (1926), 273 U. S. 510, 535, 47 S. Ct. 437, 71 L. Ed. 749, 759, 50 A. L. R. 1243.

We find no evidence in the record, and no inference that can be properly drawn from the evidence to support the court's ruling. We are convinced the court's ruling is in conflict with that part of § 1 of the Fourteenth Amendment to the Federal Constitution hereinbefore quoted, and with § 44, 8 U. S. C. A. also quoted herein, and that this ruling deprived appellant of his liberty without due process of law and denied him the equal protection of the laws.

For this error the cause is reversed with instruction to the lower court to sustain appellant's motion for new trial and for further action agreeable with this opinion.

NOTE.—Reported in 67 N. E. (2d) 138.