EMGE ET AL. *v.* SEVEDGE

[No. 17,669. Filed January 19, 1948. Rehearing denied March 4, 1948. Transfer denied April 20, 1948.]

278

*Walker, McGinnis, and Clippinger,* of Evansville, for appellants.

*McDonald & McDonald,* of Princeton, for appellee.

ROYSE, J.—James Carrigan Sevedge is the grandson of the appellee herein. He lived with his parents in Wisconsin. In August, 1945, he was seventeen years of age. During that month he visited his grandparents, appellee and his wife, at their home in Princeton, Indiana. Appellee owned a Ford tudor sedan. On the morning of August 14, 1945, the grandson met two other boy friends in Princeton and they decided to go swimming near Mount Carmel, Illinois. The grandson asked appellee for permission to drive the automobile on the swimming trip. Appellee gave his consent. The

family then had lunch. Either during or right after lunch appellee asked his grandson if he had any objection to appellee going with him to Mount Carmel where appellee would visit some friends. The grandson had no objection and appellee accompanied him and his friends to Mount Carmel. He dropped appellee off at the home of his friend and the boys then went swimming. The grandson says he determined when they would go home. Appellee said he had an understanding with the grandson that he would come back and pick appellee up in time for supper. After the boys had been swimming for about two hours rain forced them to quit. About 5 P. M. they returned to Mount Carmel and picked up appellee who rode in the front seat with his grandson. At the time it was raining. They took Highway 69 out of Mount Carmel, which is a concrete two-lane road. At a point three or four miles west of Princeton the grandson saw a refrigerator truck ahead of him. It was also going eastward. The grandson said he was traveling at a speed of not much more than 25 miles per hour. He said when he got about 65 or 70 feet behind the truck it suddenly stopped without giving any warning or signal. To avoid a collision he tried to swing to the left but could not make it. The right front half of the sedan hit the left rear of the truck. As a result of the collision appellee was seriously and probably permanently injured. The record discloses there was a shoulder to the right of the road which was solid and wide enough for the truck to get on it. It also shows there was no traffic approaching from the east to prevent the grandson from passing to the left of the truck. In the immediate vicinity of the accident the highway makes a gradual rise toward Princeton. The truck was about one-third of the way up that rise at the time of the collision.

The driver of appellants' truck gave the following version of the accident: "Before I got to the place where the accident occurred the truck began to miss as if it had drowned out. It would miss for a while, and then take hold and when I started up the grade it began to lose power. When I got a little way past where the accident happened the truck stopped, the motor died. I stepped on the starter and it would not go any more. I looked in the mirror and there was no traffic behind me. Thinking I could start the motor I let the truck roll back and it fired a time or two. I looked in my mirror again and there was a car coming. I stepped on the brake and held the truck until the car went by. As soon as it went by I looked in the mirror again and still nothing was coming. I let the truck roll back a little further with the intention of letting it roll back again. Then I noticed this other car coming and again I stepped on the brake and thought it would be the only thing to do just hold it until the car went by. The car got so close I could not see it and finally it smashed into the back end of the truck. It pushed the truck about four feet and it went out to the side of the road."

Appellee brought this action for damages against appellants. His complaint made the following charge of negligence:

"Plaintiff says further that said defendants, at said time and place, that is, at a point approximately three miles west of the city of Princeton, carelessly and negligently slowed down and stopped their said motor truck before the same could be done with reasonable safety and carelessly and negligently failed to give any appropriate signal in any manner, before so slowing down and stopping said vehicle upon the concrete slab pavement of said highway, indicating their intention to slow down and stop said motor truck upon said concrete

pavement and highway; that said defendants carelessly and negligently suddenly decreased the speed of their said motor truck and stopped the same upon the concrete pavement of said highway, immediately in front of the automobile in which this plaintiff was riding as aforesaid, without giving any appropriate signal in any manner to the driver of said automobile in which plaintiff was so riding as aforesaid, although there was ample opportunity for said defendants to have given such a signal and thus have avoided the injuries to this plaintiff herein complained of."

Appellants filed an answer in two paragraphs, the first an admission and denial under the rules. The second averred, in substance, that through no fault of appellants the motor in their truck ceased to operate and the truck was stopped on a long incline on the highway; that three red lights were burning on the rear of the truck and vision was clear along the highway for over a mile to the rear of the truck. It then avers the automobile in which appellee was riding was owned by him and was being operated by the grandson as his agent and servant and under the direct supervision of appellee; that appellee, through his agent and servant, was guilty of the following acts of negligence, which were the cause of appellee's injuries:

"First: The plaintiff failed to keep a proper lookout for other traffic on the highway and failed to properly supervise the driving of his agent and servant, James Sevedge, when the plaintiff knew that the said James Sevedge was a boy seventeen (17) years of age and inexperienced as a driver.

"Second: The plaintiff by and through his agent and servant, James Sevedge, drove the automobile in which the plantiff was riding along the public highway without keeping proper lookout for other traffic on said highway.

"Third: The plaintiff by and through his agent and servant, James Sevedge, drove the automobile

in which the plaintiff was riding upon said highway at a speed of forty (40) miles per hour, which was a dangerous, negligent and careless rate of speed because of the fact that the highway was wet from a recent rain.

"Fourth: The plaintiff by and through his agent and servant, James Sevedge, failed to turn the automobile so as to avoid a collision with the defendants' truck when there was ample time for him to turn his vehicle and there was ample room on the pavement of said highway for the plaintiff's agent to have driven the automobile past the defendants' truck."

Trial to a jury resulted in a verdict for $20,000 in favor of appellee. Judgment accordingly. The only error assigned here is the overruling of appellants' motion for a new trial.

Because of the conclusion we have reached we need consider only the 12th specification of appellants' motion for a new trial. It questions the giving of appellee's instruction No. 9, which is as follows:

"The court instructs the jury that under the law where bailment is for a specified period the rights of the bailee during said period are paramount to the rights of the bailor. So in this case if you find from a fair preponderance of the evidence that the plaintiff, James O. Sevedge, had loaned his automobile to his grandson, James Sevedge, for the specific purpose of taking himself and some companions to the city of Mount Carmel, Illinois, for a swimming party and return, and said grandson had taken possession of said automobile for said purpose, then unless the said plaintiff reserved the right to take possession and control of said automobile prior to the termination of the purpose for which it was borrowed, the rights of the grandson, James Sevedge, as bailee of said automobile, were paramount to the rights of the plaintiff, James O. Sevedge, as the owner thereof; and under such circumstances unless the right were speci-

fically reserved, the said plaintiff would have no right to interfere with the said grandson, James Sevedge, in the management and operation of said automobile, and under such circumstances the said grandson James Sevedge would not be the agent or servant of the plaintiff in the driving of said automobile."

Appellants' objection to this instruction is as follows:

"This instruction is erroneous in that it states that if the plaintiff did lend his automobile to his grandson for the purpose of making a trip to the swimming pool without specifically reserving the right to take possession and control of the automobile prior to the termination of the trip for which it was loaned, the plaintiff could not, under any circumstances, regain the right to control the automobile prior to the termination of said trip. This instruction assumes that under the facts stated in the instruction, the plaintiff had irrevocably and completely parted with the right to control the automobile for the duration of the trip. Such an irrevocable forfeiture of the right to control the automobile for such a given period of time would have to be based either upon an enforceable contract or upon estoppel. The facts assumed in this instruction do not show any consideration that would create an enforceable contract to forfeit the right of control for a definite period, nor is there any fact stated in this instruction which would warrant a conclusion of law or fact that the plaintiff by his conduct has estopped himself from reasserting the right to control the vehicle prior to the completion of the trip to the swimming pool and back.

"This instruction is further erroneous in that it ignores the fact that the presence of the owner in the car raises the presumption that the owner has the right to control the car."

The appellants' defense in this action is based on the alleged contributory negligence of the driver of ap-

pellee's automobile which contributory negligence they contend was imputable to appellee.

As is generally true, the question of contributory negligence herein was one of fact for the jury to determine. There was evidence from which they might have found the driver guilty of such negligence. Likewise there was evidence from which they might have found him free of contributory negligence. It was also a question of fact to be determined by the jury whether, if the driver of appellee's automobile was guilty of contribtuory negligence, such contributory negligence should be imputed to appellee.

It seems to us on the facts herein, the jury had the right to determine whether the fact that after appellee had given his grandson permission to use the the automobile, his subsequent action and conduct on going with them to Mount Carmel had re-established his right to control his automobile. Instruction No. 9 definitely precludes the jury from considering this question. We believe this was error.

Appellee contends that if there was error in giving this instruction it was cured by the giving of the court's instruction No. 6 and appellants' instruction No. 10. The court's instruction No. 6, in substance, told the jury the negligence of appellee's driver was to be imputed to appellee unless the jury found he had no right to direct or control the operation of the car. Appellants' instruction No. 10 recited the facts as shown by the evidence and told the jury that upon the facts set out therein the jury should find appellee was chargeable with the negligence of his driver unless they should find from other facts that at the time of the accident the appellee was completely divested of his right to control the operation of the automobile. We are of the opinion instruction No. 9 is in irreconcilable

conflict with these instructions. An erroneous instruction is not cured by giving a correct instruction. The giving of two or more conflicting instructions is cause for reversal. *Washington Hotel Realty Co.* v. *Bedford Stone, etc., Co.* (1924), 195 Ind. 128, 143 N. E. 156.

In the very recent case of *American Employers Ins. Co.* v. *Cornell* (1948), 225 Ind. 559, 76 N. E. 2d 562, the Supreme Court said:

"It is true that prejudice from an erroneous instruction is presumed unless the contrary affirmatively appears and in considering the effect of an erroneous instruction this court assumes that the error influenced the result unless it appears from the interrogatories, the evidence, or some other part of the record that the verdict under proper instructions could not have been different."

In this case there is nothing in the record which would overcome the presumption that instruction No. 9 influenced the verdict of the jury.

Therefore, the judgment is reversed.

Hamilton, J.—Dissents with opinion.

NOTE.—Reported in 76 N. E. 2d 687.

## DISSENTING OPINION

HAMILTON, J.—I am unable to agree with the majority opinion in its conclusion that the giving of appellee's instruction No. 9 constituted reversible error.

It is well settled that instructions must be considered and construed as an entirety and with reference to each other and not separately or in dissected parts and, if the instructions as a whole fairly, fully, and correctly state the law applicable to the issues and the evidence, there is no reversible error, even though some one particular instruction standing alone, and apart

from the other instructions, may be inaccurate, or erroneous, the cause will not be reversed because of error in the giving of such instructon. *Eacock* v. *State* (1907), 169 Ind. 488, 502, 82 N. E. 1039; *Indianapolis Railways* v. *Williams* (1944), 115 Ind. App. 383, 405, 59 N. E. 2d 586; *Carter* v. *Aetna Life Ins. Co.* (1940), 217 Ind. 282, 288, 27 N. E. 2d 75.

Even though appellee's instruction No. 9 may be inaccurate, I am convinced that the error, if any, in said instruction was rendered harmless by instruction No. 10, given at appellants' request, and also by instruction No. 6, given by the court upon its own motion.

Appellants' instruction No. 10 reads as follows:

"If you find from all the evidence that the plaintiff was the owner of the automobile in which he was riding at the time of the collision described in his complaint; that he was riding on the front seat thereof; that the automobile was being driven at the time by James Sevedge; that James Sevedge was seventeen (17) years of age at the time; that he was the grandson of the plaintiff; that he was a visitor in the home of the plaintiff; that neither his father nor his mother was in the car; that neither his father nor his mother was a visitor in the home of the plaintiff; that James Sevedge was driving this automobile with the permission and consent of the plaintiff; that they were returning from a trip which they had made for the purpose of permitting the grandson and his friends to go swimming and to enable the plaintiff to visit friends; then the Court instructs you that the plaintiff is chargeable with the acts and conduct of James Sevedge in driving said automobile, unless you further find that other facts existed showing that plaintiff at the time of and immediately before the accident was completely divested of the right to control the operation of said automobile; and if you further find that James Sevedge was negligent in the operation of plaintiff's automobile at that time and place, and that such negligence either caused or proximately contributed to the accident

of which the plaintiff complains, then unless you further find that the plaintiff at the time of and immediately before the accident was completely divested of the right to control the operation of said automobile, the plaintiff cannot recover in this action."

Instruction No. 6, given by the court upon its own motion, reads:

"You are instructed that the plaintiff, in his complaint, alleges that he was a passenger in the car when it crashed into the rear of defendants' truck and, on the witness stand, he said that he is the owner of the car and was the owner at the time of the accident. An owner cannot be a passenger in his own car, unless by some act or transaction he has transferred the right to use and control the car to some one else. The plaintiff's allegation in his complaint that he was riding as a passenger is a material allegation that requires proof. To make out plaintiff's case the burden of proof is on him to show by a fair preponderance of the evidence that he had transferred to his grandson, the driver of the car at the time of the accident, the absolute right to use and the absolute right to control, his car and that at the time of the accident he was riding in the car only with the consent and permission of his grandson; and, that at the time of the accident, he, the plaintiff, had no right to direct or control the driver or the operation of the car. It is of importance that you determine whether the plaintiff, at the time of the accident, was riding as the owner of the car, or as a passenger only. If he was riding as the owner then any negligence on the part of the driver, if any, would be imputed to the plaintiff and if such negligence on the part of the driver, if any, proximately contributed to the accident, the injuries and the damages resulting therefrom, if any, this would be considered as the negligence of the plaintiff and would prevent his recovery of damages in this case. On the other hand, if you should find from a fair preponderance of the evidence that the plaintiff was a passenger in the car at the time of the accident, with no right

to control said car, as alleged in the complaint, then, if you should further find that the driver of the car was guilty of negligence which proximately contributed to the accident, injuries and the damages resulting therefrom, if any, such negligence on the part of the driver would not be imputed to the plaintiff, would not be chargeable against him and would not interfere with a recovery by the plaintiff in this case."

Appellants admit that both of the above instructions are correct and accurate statements of the law applicable to the issues in the cause and the subject matter covered in each instruction.

The jury is composed of men and women of ordinary and reasonable intelligence, capable of fully understanding the English language, and it must be presumed that they understand the law as stated to them in the entire charge of instructions and apply the same to the evidence before them.

Therefore, in view of the clear, explicit language used and the admittedly full and accurate statement of the law as contained in appellants' instruction No. 10 and the court's instruction No. 6, *supra,* concerning the same subject matter as mentioned in appellee's instruction No. 9, I am unable to conceive how the jury could have been misled or confused by appellee's instruction No. 9, when all of the instructions are considered and construed as a part of a single charge of instructions.

In conclusion, I wish to call attention to the fact that in the case of *American Employers Insurance Co.* v. *Cornell,* cited in the majority opinion, the Supreme Court held that the giving of an admittedly erroneous instruction did not constitute reversible error in that case notwithstanding the general rule to the effect that

the giving of an erroneous instruction is presumed to be prejudicial and reversible error.

I think the same rule applied in the Cornell case, *supra*, applies in the instant case. See also: *Allman* v. *Malsbury* (1946), 224 Ind. 177, 65 N. E. 2d 106, 113.

Therefore, I am of the opinion that the judgment should be affirmed.

NOTE.—Reported in 76 N. E. 2d 687.