BREWER *v.* STATE OF INDIANA.
[No. 968 S 146. Filed November 14, 1969.]

*Taylor & Taylor, George E. Taylor,* Sullivan, for appellant.

*Theodore L. Sendak,* Attorney General, *Richard V. Bennett,* Deputy Attorney General, for appellee.

HUNTER, J.—Appellant, Robert M. Brewer, was tried by jury in the Sullivan County Circuit Court and was found guilty in May, 1968, of first degree murder in the shotgun death of one Robert J. Snyder of Carlisle, Indiana. A motion for a new trial was filed alleging certain errors and said motion was denied by the trial court. Appellant brings this appeal assigning as error the overruling of his motion for a new trial. He bases his appeal on three grounds: (1) the exclusion of women from the petit jury, (2) confusion resulting from the state's instructions and (3) insufficiency of the evidence.

The first ground for error asserted by the appellant is "that women as a class were excluded from the petit jury panel, including the regular panel and alternates thereto, and the twenty-five special jurors selected as potential jurors in this cause." As set forth in the appellant's motion for a new

trial, there was only one woman juror available in the first twenty-five special jurors and no other women on the special panel for this cause. The one woman among the first twenty-five special jurors, juror no. 8, was excused by the court with the concurrence of the appellant when it was shown that she was ineligible to serve on the jury because she was not a resident of Sullivan County. Furthermore, examination of the prospective panel of jurors indicated that out of a total of seventy-five jurors, there were only three women. They were special jurors nos. 30, 46 and 66. Since juror no. 8 was excused from the regular panel and the next female juror on the list of prospective jurors was juror no. 30, appellant complains that, even using his twenty preemptive challenges, he could not have had any women on the jury in this trial.

The thrust of appellant's argument is that the exclusion of women from the jury panel was harmful to appellant's defense and was prejudicial. He contends that the seating of an all male jury caused by a *de facto* exclusion of women was such error as to be sufficient grounds for the granting of a new trial by the lower court.

The statute providing for selection of grand and petit juries in Indiana is Ind. Ann. Stat. § 4-7104 (1968 Repl.) set forth in part as follows:

"Selection of grand and petit jurors—Said commissioners shall immediately, from the names of legal voters and citizens of the United States on the latest tax duplicate and the tax schedules of the county, examine for the purpose of determining the sex, age and identity of prospective jurors, and proceed to select and deposit, in a box furnished by the clerk for that purpose, the names, written on separate slips of paper of uniform shape, size and color, of twice as many persons as will be required by law for the grand and petit jurors in the courts of the county, for all the terms of such courts, to commence with the calendar year next ensuing. Each selection shall be made as nearly as possible in proportion to the population of each county commissioner's district. In making such selections, they shall in all things observe their oath, and they shall not select the name of any person who is not a voter of the county, or who

is not either a freeholder or householder, or who is to them known to be interested in or has cause pending which may be tried by a jury to be drawn from the names so selected. They shall deliver the box, locked, to the clerk of the circuit court, after having deposited therein the names as herein directed. The key shall be retained by one (1) of the commissioners, not an adherent of the same political party as is the clerk."

It cannot be disputed that the cherished right to trial by jury is basic to our system of jurisprudence. To be a meaningful right, it is imperative that juries be truly representative of the community and that the jurors be capable and impartial. Any deliberate exclusion from the jury of otherwise qualified groups is unfair and a violation of the due process clause of the United States Constitution. *Smith* v. *State of Texas* (1940), 311 U. S. 128, 61 S. Ct. 164, 85 L. Ed. 84. Appellant does not challenge Indiana's jury statute § 4-7104, *supra,* as constitutionally objectionable. He makes no claim that the statute excludes women or any other qualified class of citizens from juries. Instead, appellant argues that women as a class were *excluded* from the petit jury because the jury commissioners in the exercise of their judgment and discretion, produced an underrepresentation of women on the venire of seventy-five prospective jurors. We cannot agree with appellant that this is reversible error.

To say in any one trial that a venire of prospective jurors does not constitute a sufficient representation of women according to a cross-section of taxpayers in a particular county, is without meaning. In the first place, that which must be a representative cross-section is not one particular venire, but rather it is the original yearly selection of names of prospective jurors for all the terms of court during the calendar year next ensuing. *Woods* v. *State* (1968), 250 Ind. 132, 235 N. E. 2d 479. Appellant did not call any jury commissioner to testify nor did he produce any other evidence to prove that the names in the box of prospective jurors were not a reasonable representation of the community. It is clear that appel-

lant has no absolute right to women on the jury. In fact, though Indiana has not chosen to do so, a state may constitutionally confine jury duty to males. *Strauder* v. *West Virginia* (1880), 100 U. S. 303, 25 L. Ed. 664; *Fay* v. *New York* (1947), 332 U. S. 261, 91 L. Ed. 2043; *Hoyt* v. *Florida* (1961), 368 U. S. 57, L. Ed. 2d 118.

This court has said that where selection of the jury list was made in a good faith exercise of discretion vested in the jury commissioners, a violation of statutory duty would not be assumed because of the result that no women were drawn. *Jacobs* v. *State* (1936), 210 Ind. 107, 1 N. E. 2d 452. There must be a showing that the jury commissioners were arbitrary or deliberate in their exclusion of the women from the jury list. In the absence of bad faith or probable harm, we must not quash an indictment nor reverse a trial. *Butler* v. *State* (1967), 249 Ind. 484, 229 N. E. 2d 471. It will not be presumed that appellant's rights were prejudiced by the action of the jury commissioners in not including names of women. In *Hoyt* v. *Florida, supra,* the United States Supreme Court states that the burden of proof is on the complaining party to show that the exclusion was done pursuant to an arbitrary scheme and how he was prejudiced thereby.

In the instant case, appellant concedes that the jury commissioners had no evil intent in drawing the panel of prospective jurors practically eliminating women. Nor does he assert that there was any purposeful or intentional exclusionary plan evidenced by their conduct. The only substantive objection raised by appellant is that he was prejudiced by an all male jury.

Citing various legal scholars who have done research in the field, appellant refers to the following authorities: *Successful Techniques in the Trial of Criminal Cases,* Rothblatt, Henry B., 1961, p. 23. *How to Prepare and Try a Negligence Case,* Low, Elmer, 1957, p. 115. *The Jury and the Defense of Insanity,* Simon, Rita James, 1967, p. 109. Appellant argues that women are desirable as jurors if the principal

or prosecuting witness is a woman, and they are also desirable in cases involving children. Both of these factors were present in this case to-wit: a young boy as defendant and a woman (Mrs. Robert J. Snyder) as the principal prosecuting witness.

Robert M. Brewer was fourteen years old at the time of the alleged killing. He had been living in the home of victim Robert J. Snyder for over three months prior to the homicide. He was placed there by the Sullivan County Welfare Department after he had run away from the home of his father, Ralph E. Brewer, also of Carlisle. Appellant introduced much evidence at the trial indicating that his home life was an unhappy one. He had lived with one relative after another since 1954, when his parents were separated. He never knew his mother until she visited him in jail in 1968, and he did not get along with his father. Evidence introduced at the trial indicated that appellant was satisfied living with the victim and his wife and was deeply disappointed when told prior to the shooting that they could not keep him in their home any longer. These are circumstances which *might* cause a jury composed of men and women to react differently than one comprised of men only. However, this court seeks neither to prove nor disprove appellant's hypothesis. Rather, we repeat the rule enunciated by the U. S. Supreme Court as pertinent here:

> "That right (to an impartially selected jury assured by the Fourteenth Amendment) does not entitle one accused of crime to a jury tailored to the circumstances of the particular case, whether relating to the sex or other condition of the defendant, or to the nature of the charges to be tried. It requires only that the jury be indiscriminately drawn from among those eligible in the community for jury service, untrammeled by any arbitrary and systematic exclusions." *Hoyt* v. *Florida, supra.*

The appellant's allegation of prejudice must fail. He makes no showing of harm beyond the proposition that women on the jury would have been better suited to his defense.

We think the rule in this case should be stated as follows: unless there is a showing of bad faith, substantive prejudice to the rights of the accused, some arbitrary system of exclusion, *or* other evidence of intentional misconduct, indictment or trial by an all male jury is not reversible error.

The appellant's second ground for objection is based on the giving of state's instructions Nos. 2 and 3 as set forth below:

*State's Instruction No. 2*
"In determining the effect of irresistible impulse, a person that has sufficient mental capacity to know right from wrong and be able to understand the nature and consequence of his act, whose will power is not so impaired by a diseased mind so that he can resist an impulse to kill another person, there is not mental unsoundness of mind in the eyes of the law. In other words, if the will of such a person is simply overbourne by ungoverned passion or temper and is not the result of a diseased mind then criminal responsibility results from his criminal act."

*State's Instruction No. 3*
". . . The statute of this state defining manslaughter reads as follows: 'Whoever voluntarily kills any human being without malice, expressed or implied, in a sudden heat, or involuntarily in the commission of some unlawful act, is guilty of manslaughter, and on conviction shall be imprisoned not less than two (2) nor more than twenty-one (21) years."

Appellant argues that state's instruction No. 2 incorrectly states the law; and in addition, he objects to the giving of instruction No. 2 as incompatible with instruction No. 3. He asserts that the two instructions given together tend to confuse and mislead the jury and leave it in doubt as to the law. Because of these defects in the instructions, appellant believes that prejudice has resulted compelling a reversal. We cannot agree.

In requesting instruction No. 2 be tendered by the court, the state relied for its authority for the giving of said instruc-

tion on *Warren* v. *State* (1962), 243 Ind. 508, 515, 188 N. E. 2d 108. That case stated the rule as follows:

> "In determining the effect of irresistible impulse it is the settled law of this state that a person may have sufficient mental capacity to know right from wrong and be able to understand the nature and consequences of his act and yet not be responsible for his actions, if his will power is so impaired by a diseased mind that he cannot resist an impulse to commit the criminal act. In other words, if the lack of will power is the result of a diseased state of mind, there is mental unsoundness in the eyes of the law; but if the will is simply overborne by ungoverned passion, there may be criminal responsibility."

Comparing state's instruction No. 2 with the rule as recited in *Warren* v. *State, supra,* we are constrained to conclude that they are substantially the same. We cannot say that because a rule of law is not worded in a particular way, it is *per se* erroneous. An examination of cases dealing with the question of insanity and irresistible impulse clearly demonstrates the variety of ways in which this same rule may be enunciated. See *Warren* v. *State, supra; Whitaker* v. *State* (1960), 240 Ind. 676, 168 N. E. 2d 212; *Flowers* v. *State* (1957), 236 Ind. 151, 139 N. E. 2d 185; *Plake* v. *State* (1890), 121 Ind. 433, 23 N. E. 273; *Goodwin* v. *State* (1884), 96 Ind. 550.

We are of the opinion that the instruction on insanity must be examined to determine if it contains language which at least sets forth the following ideas:

(1) That the accused could know and comprehend the nature and consequences of his act. The nature of the act embraces knowledge on his part that the act was wrong, for if the accused be unable to distinguish right from wrong he would not know the nature of his act.

(2) That the accused had sufficient power to control his impulse to commit the act charged.

*Flowers* v. *State, supra; Kallas* v. *State* (1949), 227 Ind. 103, 83 N. E. 2d 769; *Morgan* v. *State* (1921), 190 Ind. 411,

130 N. E. 528; *Plake* v. *State, supra; Goodwin* v. *State, supra; Bradley* v. *State* (1869), 31 Ind. 492; *Stevens* v. *State* (1869), 31 Ind. 485.

This court is satisfied, as was the trial court that these two ideas were satisfactorily conveyed in state's instruction No. 2. It might be argued that *Warren, supra,* said it better, but that is not, in itself, sufficient grounds on which to base a finding of prejudice.

Moreover, it cannot be said as a matter of law that the jury was misled or confused by state's instruction No. 2 when read with instruction No. 3. To be sure, instructions which are apt to mislead or confuse the jury should not be given. *Hashfield* v. *State* (1965), 247 Ind. 95, 210 N. E. 2d 429; *Miller* v. *State* (1944), 223 Ind. 50, 58 N. E. 2d 114. And if two or more instructions are inconsistent, and calculated to mislead the jury, or leave it in doubt as to the law, it is cause for reversal. *Emge et al.* v. *Sevedge* (1948), 118 Ind. App. 277, 76 N. E. 2d 687; *Maddox* v. *Yocum* (1941), 109 Ind. App. 416, 31 N. E. 2d 652.

In the case at bar, we are unable to sustain appellant's contention that the jury was confused or misled nor are we able to determine wherein lies the incompatibility between the state's two instructions. Appellant in his brief fails to indicate what confused the jury. A mere assertion that the jury was misled or confused by the court's instructions without elaboration or supporting case law cannot support an allegation of error on appeal unless the defect is patently obvious.

That is not the case here. On the contrary, where there can be no doubt as to how the jury could reasonably react to the instructions and where that reaction could not prejudice the appellant, it cannot be contended that the instructions constitute reversible error. *Baker* v. *Mason* (1968), 253 Ind. 348, 242 N. E. 2d 513. We believe the state's instructions read individually and together properly

conveyed to the jury the law of Indiana as it relates to irresistible impulse and manslaughter.*

Appellant's third and final ground for error is that there is insufficient evidence to establish premeditation and the verdict of first degree murder is contrary to law.

When the question of the sufficiency of the evidence is raised, we will consider only that evidence most favorable to the state, together with all reasonable inferences to be drawn therefrom. *Carter* v. *State* (1968), 250 Ind. 50, 234 N. E. 2d 850; *Capps* v. *State* (1967), 248 Ind. 472, 229 N. E. 2d 794; *Fisher* v. *State* (1966), 247 Ind. 529, 219 N. E. 2d 818; *Beatty* v. *State* (1963), 244 Ind. 598, 194 N. E. 2d 727. Moreover, this court will not weigh the evidence nor determine the credibility of the witnesses. *Stock* v. *State* (1966), 247 Ind. 532, 219 N. E. 2d 809.

Premeditation is an essential element in the proof of first degree murder. Ind. Ann. Stat. § 10-3401 (1956 Repl.). It has been defined as the act of meditating in advance; deliberation upon a contemplated act; plotting or contriving; a design formed to do something before it is done. *Lemay* v. *State* (1963), 244 Ind. 652, 190 N. E. 2d 189.

From the record of the testimony in this cause, the jury could reasonably have found the following facts: the appellant Robert M. Brewer was deeply disappointed when told four days before the homicide on Tuesday, January 23, 1968, that

---

* This court in *Hill* v. *State* (1969), 252 Ind. 601, 251 N.E. 2d 429, indicated that the modified ALI rule as stated in *U.S.* v. *Freeman* (2d Cir. 1966), 357 F. 2d 606, would better aid the courts of Indiana in arriving at truth and justice when considering pleas of insanity. The rule is quoted as follows: "(1) A person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he lacks substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law. . . . (2) As used in this Article, the terms 'mental disease or defect' do not include abnormality manifested only by repeated criminal or otherwise anti-social conduct." Although the modified ALI rule was not in issue in this case, we feel obliged to note its importance in the criminal law of Indiana and to emphasize its desirability in determining the question of insanity.

he would no longer be able to live in the home of the decedent and his wife Mable Snyder. According to his own testimony, appellant had been happy with the Snyder family and he cried when the decedent broke the news to him.

The next day, Wednesday, January 24, the appellant was visited by a representative of the Knightstown School which was to be his next stop after leaving the Snyder home. He did not want to go, he wanted to stay with the Snyders. He stated this in his own testimony.

On Wednesday or Thursday, January 24 or 25, appellant testified that he took a shotgun from the closet in the decedent's bedroom and placed it behind the door in his own bedroom. He stated that he kept it loaded with three or four shells. Decedent's wife, Mable Snyder noted in her testimony that her husband Bob had hidden the weapon behind the clothing in their bedroom closet when appellant came to live with them.

On Saturday evening, January 27, the decedent's wife, who was the only eyewitness to the killing, testified to the following facts and circumstances: that the appellant seemed nervous. He had eaten less than usual for dinner that evening and this had disturbed the decedent. Appellant walked around the house restlessly, from the kitchen to the living room, to his bedroom and back to the kitchen again. Immediately preceding the shooting, appellant called Mrs. Snyder to his bedroom. When she arrived there from the living room she saw appellant standing over the contents of a gold fish bowl which had fallen on the floor. Before she could understand what was happening, appellant came at her with an ice pick and stabbed her. She ran toward the living room for help. When she turned around and looked back at appellant, he shot her with a shotgun. In the meantime Robert Snyder, the decedent, jumped up and went toward his wife to assist her. Appellant shot him twice. With both of the Snyders wounded on the living room floor, appellant fired a fourth and final shot which narrowly missed the head of Mrs. Snyder.

As to premeditation, the formation of the intention to kill and the killing may be as instantaneous as successive thoughts. *May* v. *State* (1953), 232 Ind. 523, 112 N. E. 2d 439; *Kallas* v. *State, supra; McDermott* v. *State* (1883), 89 Ind. 187. We do not intend nor are we permitted to second guess the jury in its determination of when it found the formation of the intention to kill to have occurred. We hold, however, as a matter of law, that this evidence together with the reasonable inferences deducible therefrom, is sufficient to sustain a finding of premeditation. Therefore, the verdict of first degree murder is not contrary to law.

Judgment affirmed.

Arterburn and Givan, JJ., concur; DeBruler, C.J., dissents with opinion; Jackson, J., dissents with opinion.

### DISSENTING OPINION

DeBruler, C.J.—After the swearing of the regular panel of twelve, three alternates and twenty-five special jurors for voir dire examination, appellant made a motion challenging the array on the ground that none of these prospective jurors was a woman, except one who had previously been declared ineligible as a non-resident, and that this constituted a *de facto* exclusion of women as jurors. Furthermore, there were only three other women out of a total of eighty-eight prospective jurors.

I believe this was a sufficient showing of a *de facto* exclusion of women to have the trial court hold a hearing to inquire into the procedure used by the jury commissioners in selecting those persons whose names were placed in the jury box, the procedures used by the clerk in drawing the names from the jury box, and thereby to determine why there was a grossly disproportionate ratio of men to women among the prospective jurors. I would remand this cause to the trial court for such a determination.

This is especially true in light of the fact that the circuit court judge appoints the jury commissioners and instructs

them concerning their duties. Acts 1881 (Spec. Sess.), ch. 69, § 1, as last amended by Acts 1967, ch. 140, § 1, being Burns Ind. Stat. Ann. § 4-7101. When an improbable array is challenged the court should be anxious to show that its instructions to the jury commissioners were lawful and that those commissioners followed the instructions and the statutes.

At this hearing appellant should be in the same position as a person challenging the exclusion of a particular racial or ethnic class from the jury lists. There is no justification for treating women any differently than a racial or ethnic class, with reference to official discrimination against their full participation in the affairs of government. To exclude women from juries is just as surely a violation of the equal protection clause of the Fourteenth Amendment to the United States Constitution and Art. 1, § 23 of the Indiana Constitution, as to exclude Negroes.

It follows from this that appellant need not show bad faith or intentional misconduct by any officials responsible for selecting prospective jurors. This was held in *Smith* v. *Texas* (1940), 311 U. S. 128, 61 S. Ct. 164, 85 L. Ed. 84, where the United States Supreme Court said:

> "It is part of the established tradition in the use of juries as instruments of public justice that the jury be a body truly representative of the community. For racial discrimination to result in the exclusion from jury service of otherwise qualified groups not only violates our Constitution and the laws enacted under it but is at war with our basic concepts of a democratic society and a representative government. We must consider this record in the light of these important principles.
>
> \* \* \*
>
> *"If there has been discrimination, whether accomplished ingeniously or ingenuously, the conviction cannot stand."* (Emphasis added.)

See also *Jones* v. *Georgia* (1967), 389 U. S. 24, 87 S. Ct. 4, 19 L. Ed. 2d 25; *Whitus* v. *Georgia* (1967), 385 U. S. 545, 87

S. Ct. 643, 17 L. Ed. 2d 599; *Hernandez* v. *Texas* (1954), 347 U. S. 475, 74 S. Ct. 667, 98 L. Ed. 866; *Patton* v. *Mississippi* (1947), 332 U. S. 463, 68 S. Ct. 184, 92 L. Ed. 76; *Norris* v. *Alabama* (1935), 294 U. S. 587, 55 S. Ct. 579, 79 L. Ed. 1074; *Dixon* v. *State* (1946), 224 Ind. 327, 67 N. E. 2d 138.

All that need be shown is that members of the relevant class were excluded. I believe the fact that there were only three women out of eighty-eight prospective jurors constitutes a sufficient showing to place the burden on the State to show that there was no discrimination against women as prospective jurors. *Jones* v. *Georgia, supra; Norris* v. *Alabama, supra.*

Neither should appellant have to show that the exclusion of the relevant class from jury duty resulted in harm to appellant. This has never been required in the Negro exclusion cases. *Jones* v. *Georgia, supra; Whitus* v. *Georgia, supra; Hernandez* v. *Texas, supra; Patton* v. *Mississippi, supra; Smith* v. *Texas, supra; Norris* v. *Alabama, supra.*

This Court also rejected that contention in *Walter* v. *State* (1934), 208 Ind. 231, 195 N. E. 268, when it said:

"It does not suffice to say that appellant can not show that his substantial rights were impaired, or that the jurors were biased or prejudiced against him, or that he did not have a fair trial. Peremptory challenges are permitted where a defendant does not, and presumably can not, point to any bias or prejudice, or lack of qualification. For reasons, the sufficiency of which we may not question, the legislature has seen fit to provide that a defendant shall have the right to a trial by jury, the names of the members of which are drawn from the jury box, and that the names which go into the jury box shall be selected by jury commissioners upon their own judgment from the names of the legal voters and citizens on the tax duplicate, which we construe to mean all classes of citizens and taxpayers whose names appear. *This right may not legally be denied, and if it is denied we must presume that the defendant was prejudiced thereby.* Any other rule would permit the jury commissioners, upon their own agreement, or upon suggestion, to exclude any class not only upon the basis of sex, but because of political affiliation, religious belief, an-

cestry, occupation, or location of residence, and we can see nothing that would prevent the exclusion of not only one, but numerous classes from jury service." (Emphasis added.)

I recognize that the case of *Butler* v. *State* (1967), 249 Ind. 484, 229 N. E. 2d 471, states a contrary rule concerning what appellant would have to prove. However, that case is based on treating women as a class in a manner that this Court could not and would not treat a racial or ethnic class. I believe the *Butler* case permits a discriminatory treatment of women in violation of the equal protection clause of the Fourteenth Amendment to the United States Constitution and Art. 1, § 23 of the Indiana Constitution.

## DISSENTING OPINION

JACKSON, J.—I am unable to concur in the majority opinion and dissent thereto.

Before discussing the legal propositions raised by the motion for new trial and the assignment of errors in the case at bar I deem it necessary to summarize a facet of this case. In the case at bar the appellant is the product of a broken home, it seems probable from the record herein that in addition to problems confronting him as a result of the broken home and subsequent living conditions appellant suffers some congenital impairment or incompetence; the record discloses that the father, with whom appellant lived a large part of his life, had mental problems stemming from military service in World War II, during which service he was captured and incarcerated in a German prison camp, and was thereafter confined in the V. A. Hospital at Marion, Indiana, from 1960 to 1965; during the time appellant lived with his father the father drank to excess and beat and mistreated appellant to the point where appellant was taken from the father's home and sent to live with various and sundry relatives; the record further discloses that in each case such relative after a time passed appellant to another realtive on account of appellant's refusal or failure to conform to the norms of society. The

record also discloses apparent difficulty by appellant in school. I refer to the above. record not for the purpose of arousing sympathy for appellant or providing extenuating circumstances to ameliorate punishment, but for the express purpose of pointing out that warning signals were only too apparent to the public that here was a youngster headed for grave trouble unless given help by society. So far as disclosed by the record, society did nothing to prevent appellant's drift to his present position. Apparently the imminent end, of what appears from the transcript to have been of one of the few pleasant interludes in his life, terminated in the death of his benefactor. As a result of which we are now confronted with the spectacle of a fourteen year old child, having stood trial on and been convicted of a charge of murder in the first degree, appealing his conviction and sentence of imprisonment for the balance of his life in the Indiana State Prison.

For the purpose of this dissent I deem it sufficient to discuss only specification No. 2 of appellant's Motion for a New Trial which reads as follows:

"2. Error of law occurring at the trial as follows:
The Court erred in giving State's tendered instruction No. 2 to the jury, the giving of which was duly objected to by the defendant within the proper time by filing written objection to said instruction after the Court had indicated the instruction would be given to the jury."

The written objections to the giving of State's Instruction No. 2 read as follows:

"2. The defendant objects to the giving of State's instruction No. 2 on the grounds that in the last sentence of said instruction it states that 'if the will of such person is simply overbourne by ungoverned passion or temper and is not the result of a diseased mind then criminal responsibility results from his criminal act' while in State's instruction No. 3 which is to be given the jury the offense of involuntary manslaughter is described by quoting the statute which shows that manslaughter can be the verdict if such killing is done in a 'sudden heat.' The two instructions are therefore very confusing to the jury and by reason of same would be erroneous and prejudicial to the defendant."

State's Instruction No. 2 reads as follows:

"In determining the effect of irresistible impulse, a person that has sufficient mental capacity to know right from wrong and be able to understand the nature and consequence of his act, whose will power is not so impaired by a diseased mind so that he can resist an impulse to kill another person, there is not mental unsoundness of mind in the eyes of the law. In other words, if the will of such person is simply overbourne by ungoverned passion or temper and is not the result of a diseased mind then criminal responsibility results from his criminal act."

The above instruction purportedly was given pursuant to the approval of the instruction given in *Warren* v. *State* (1963), 243 Ind. 508, 515, 188 N. E. 2d 108.

The cited case, *Warren* v. *State, supra,* holds as follows:

"In determining the effect of irresistible impulse it is the settled law of this state that a person may have sufficient mental capacity to know right from wrong and be able to understand the nature and consequences of his act and yet not be responsible for his actions, if his will power is so impaired by a diseased mind that he cannot resist an impulse to commit the criminal act. In other words, if the lack of will power is the result of a diseased state of mind, there is mental unsoundness in the eyes of the law; but if the will is simply overbourne by ungoverned passion, *there may be criminal responsibility.* See: *Plake* v. *The State* (1890), 121 Ind. 433, 435, 23 N. E. 273, 16 *Am. St. Rep.* 408, *Flowers* v. *State, supra.*" (Emphasis supplied.)

Clearly, State's Instruction No. 2 is erroneous and the giving of the same over defendant's written objection constituted reversible error and was prejudicial to the defendant.

For the error of law complained of, this cause should be reversed and remanded to the trial court with instructions to grant appellant's Motion for a New Trial.

Other questions presented need not be and are not here discussed or considered in view of my determination of the question relative to the aforementioned instruction.

NOTE.—Reported in 252 N. E. 2d 429.